UNITED STATES *v.* KENNEDY & MOON (No. 1668).[1]

REPAIRS FOR AMERICAN VESSELS—WIRELESS APPARATUS.

In view of the act of July 23, 1912 (37 Stat., 199) amendatory of the act of June 24, 1910, compelling ships of a certain class to be equipped with wireless apparatus of a certain class, such apparatus imported to replace inefficient apparatus upon such American ships is admissible free of duty as repairs for American vessels under subsection 6 of paragraph J of section 4, tariff act of 1913, and not dutiable as being in chief value of metal under paragraph 167.

United States Court of Customs Appeals, February 2, 1917.

APPEAL from Board of United States General Appraisers, G. A. 7841 (T. D. 36078).

[Affirmed.]

*Bert Hanson,* Assistant Attorney General (*John J. Mulvaney,* special attorney, of counsel), for the United States.
*Gerry & Wakefield* for appellees.

[Oral argument Oct. 24, 1916, by Mr. Hanson and Mr. Wakefield.]

Before MONTGOMERY, SMITH, BARBER, DE VRIES, and MARTIN, Judges.

BARBER, Judge, delivered the opinion of the court:

There is no issue of fact in this case, the sole question being whether six wireless telegraphy outfits hereinafter referred to are or are not dutiable.

---

[1] Reported in T. D. 37010 (32 Treas. Dec., 187);

The Panama Railroad Co., the stock of which is owned by the United States, operates six steamships. Four of these are owned by the United States Government and the other two by the railroad company. All are under United States registry. On each, sometime in May or June, 1914, one of these wireless outfits was installed, replacing such an apparatus already in use. These vessels, at the time and prior thereto, had been and were engaged in the carrying trade between New York City and the Panama Canal Zone and were within the provisions of the act of Congress approved July 23, 1912, hereinafter referred to. Two protests are involved in this case.

Of just what a wireless apparatus consists, the record does not disclose. Whatever it may be it was referred to in the protests as an "electrical apparatus;" in one answer thereto as a "complete wireless telegraph station composed in chief value of metal" and in the other as consisting "of receivers, electrical apparatus, and wireless outfit composed in chief value of metal," and in both answers said to be "suitable for the outfit and equipment of vessels."

The reports of the collector submitting these protests to the board are identical except as to dates. One of the same is here inserted:

Respectfully referred to the Board of United States General Appraisers for decision.

The wireless apparatus in question was reported by the United States special agent designated to investigate as having been installed on old boats and therefore excluded from the free privileges of paragraph J, subsections 5 and 6, section 4, act of 1913.

In view of said report duty was assessed at 20 per cent under paragraph 167 of said act. Note sections 5 and 6, and 7 of T. D. 34150, wherein free entry is limited to original outfit and equipment to vessels in course of construction.

The regulations prescribed by the Secretary of the Treasury have been complied with.

The dutiability of the merchandise depends upon the interpretation to be given subsections 5 or 6 of paragraph J of section 4 of the tariff act of 1913. They are as follows:

J. (Subsection 5.) That all materials of foreign production which may be necessary for the construction of naval vessels or other vessels of the United States, vessels built in the United States for foreign account and ownership, or for the purpose of being employed in the foreign or domestic trade, and all such materials necessary for the building of their machinery, and all articles necessary for their outfit and equipment, may be imported in bond under such regulations as the Secretary of the Treasury may prescribe; and upon proof that such materials have been used for such purposes no duties shall be paid thereon.

J. (Subsection 6.) That all articles of foreign production needed for the repair of naval vessels of, or other vessels owned or used by, the United States and vessels now or hereafter registered under the laws of the United States may be withdrawn from bonded warehouses free of duty, under such regulations as the Secretary of the Treasury may prescribe.

The case was proceeded with before and disposed of by the Board of General Appraisers upon the theory that the regulations of the Secretary made under said subsections had been complied with, and we proceed upon the same theory, which renders it unnecessary to consider some questions referred to in the Government's brief.

As having an important bearing upon the issue, attention is directed to an act of Congress approved July 23, 1912 (vol. 37, part I, p. 199, Stat. L.). This act declares that it shall be unlawful for any steamship of a class that includes those above referred to as belonging to the Panama Railroad Co. to leave or attempt to leave any port of the United States unless such ship "shall be equipped with an efficient apparatus for radio communication, in good working order, capable of transmitting and receiving messages over a distance of at least 100 miles day or night." The act requires an auxiliary electric power plant adequate to operate the sending set of said apparatus and efficient to enable it to send messages for the distance last above mentioned. It is amendatory of the earlier statute of June 24, 1910, which is of similar import.

The Board of General Appraisers upheld the claim for free entry and the Government brings the case here. Its contentions may be classified under two heads: (1) That the importations do not consist of outfit and equipment under subsection 5 above quoted; and (2) that they can not be deemed repairs under subsection 6.

We think it is unnecessary for the purposes of this case to consider the first point, as the provisions of subsection 6 justify the affirmance of the judgment below.

This subsection provides in substance that all articles of foreign production needed for the repair of vessels like those of the Panama Railroad Co. shall be entitled to free entry, and if the wireless apparatus was needed for and as used constitutes such a repair, it should receive that benefit. The statute of 1912 manifestly requires that such vessels shall constantly maintain an efficient apparatus for wireless communication capable of transmitting and receiving messages day or night over at least 100 miles. A penalty is provided for failure to maintain such equipment, and to carry out the purposes of the act it is provided that requisite operators shall be carried on the ships. Under this statute whenever a radio-communication equipment fails to be efficient within the meaning of the statute, it becomes the duty of the owner of the vessel to see that such outfit or apparatus or equipment—whatever it may be called—is put in condition to answer the statutory requirements.

The Board of General Appraisers found that the wireless apparatus earlier placed upon these steamships did not work well and that it was necessary to put in a new one. The undisputed evidence was that it was not satisfactory, was old-fashioned, and did not give good results. There is no claim or suggestion that the new apparatus does not conform to the statutory requirements and the customs officers seem to have assumed that it does.

Manifestly, in replacing this old apparatus with an efficient new one, the Panama Railroad Co. was complying with the law. By the

enactment of this statute Congress not only recognized the incalculable benefits .which science and inventive genius combined had given to the world in wireless telegraphy, but it also clearly intended to constantly secure such benefits to those who travel upon the sea. In such a view of the act of 1912, we think it is a fair interpretation thereof to hold that this substitution of this wireless apparatus for one that was inefficient was a repair to a vessel within the meaning of subsection 6. By the command of law a wireless apparatus is a necessary part of such a vessel and whether it be termed an outfit or equipment in the first instance is not material.

In Treasury regulations (T. D. 34150) it is said, referring to said subsection 6, that the term vessel therein referred to—

must be therefore taken as a whole with all the permanent attachments necessary or useful to accomplish the object for which it is designed. * * * All merchandise may therefore be admitted under this subsection which is suitable and intended for the repair of the hull, or for the repair or replacement of permanent attachments to the vessel, including its machinery, and which are necessary or useful in the navigation, operation, or maintenance of the vessel. This will include not only so-called raw materials, but, in general, completed articles, including machinery, either propelling or auxiliary, which are to be permanently attached to the hull of the vessel and which serve the purpose for which the vessel was designed.

We think this regulation, for the purposes of this case, correctly interprets the statute and that these wireless outfits are within the same. Clearly, from its very nature, a wireless apparatus is either a permanent attachment to the vessel or is a part of its machinery, and the necessary substitution of the new apparatus for the old is within the terms of the regulation a complete article used as a replacement either for a permanent attachment or for machinery already there and is necessary to the accomplishment of the vessel's purpose.

We have no hesitation in saying that the judgment below was right and ought to be, and hereby is, *affirmed.*