UNITED STATES *v.* REID & Co. (No. 2011).[1]

1. CONSTRUCTION, SUBSECTION 5, PARAGRAPH J, SECTION IV, TARIFF ACT OF 1913— MATERIALS FOR CONSTRUCTION OF AMERICAN VESSELS—MANUFACTURES DISTINGUISHED.

Forced-draft fans, with engines attached, completely finished for the forcing of air through heater boxes into the furnaces of vessels, are not *materials* for American vessels within subsection 5, paragraph J, Section IV, tariff act of 1913. They are finished manufactures, and the collector's classification under paragraph 167 as miscellaneous metal articles is approved.

[1] T. D. 38357 (38 Treas. Dec., 275).

2. EVIDENCE—PRESUMPTION IN FAVOR OF COLLECTOR'S CLASSIFICATION—ARTICLE
   333, CUSTOMS REGULATIONS, 1915—AMERICAN GOODS RETURNED.

   A claim for free entry of engines, having forced-draft fans attached, as American
   goods returned without advancement or improvement in value or condition under
   paragraph 404, tariff act of 1913, is not supported by a statement in the foreign
   export entry that the engines were originally of American manufacture, and that
   they were shipped to Canada "for connection to the fans." With no other evi-
   dence, and without compliance with article 333, Customs Regulations of 1915,
   pursuant to paragraph 404, the collector's classification as miscellaneous metal
   articles under paragraph 167 is approved.

United States Court of Customs Appeals, March 24, 1920.

APPEAL from Board of United States General Appraisers, G. A. 8287 (T. D. 38135).

[Reversed.]

*Bert Hanson,* Assistant Attorney General (*Martin T. Baldwin,* special attorney),
for the United States.

*Crim & Wemple* (*William L. Wemple* of counsel) for appellees.

[Oral argument Feb. 26, 1920, by Mr. Baldwin and Mr. Wemple.]

Before MONTGOMERY, SMITH, BARBER, DE VRIES, and MARTIN, Judges.

SMITH, Judge, delivered the opinion of the court:

Two blowers, or forced-draft fans, with engines attached, im-
ported at the port of Duluth, Minn., about the month of January,
1919, were classified by the collector of customs as articles composed
wholly or in chief value of metal, and assessed for duty at 20 per
cent ad valorem under that part of paragraph 167 of the tariff act of
October 3, 1913, which reads as follows:

167. Articles or wares not specially provided for in this section; * * * if com-
posed wholly or in chief value of iron. steel, lead, copper, brass, nickel, pewter, zinc,
aluminum, or other metal, * * * whether partly or wholly manufactured, 20
per centum ad valorem.

The importers protested, first, that the blowers, or forced-draft
fans, were materials for use on and in the construction of vessels, and
that they were therefore free of duty under subsection 5, paragraph
J, Section IV, of the act of 1913; second, that the engines were arti-
cles of American manufacture, returned to the United States, and
that, therefore, they were entitled to free entry under the provisions
of paragraph 404 of the tariff act of 1913. Subsection 5, paragraph
J, Section IV, of the act of 1913, and paragraph 404 of the free list
of said act, in so far as they are pertinent to the case, are as follows:

(Subsection 5, par. J.) That all materials of foreign production which may be nec-
essary for the construction of naval vessels or other vessels of the United States, ves-
sels built in the United States for foreign account and ownership, or for the purpose
of being employed in the foreign or domestic trade, and all such materials necessary
for the building of their machinery, and all articles necessary for their outfit and
equipment may be imported in bond under such regulations as the Secretary of the
Treasury may prescribe; and upon proof that such materials have been used for such
purposes no duties shall be paid thereon.

That on and after the day following the passage of this act, * * * the articles mentioned in the following paragraphs shall, when imported into the United States * * * be exempt from duty. * * *

404. Articles the growth, produce, or manufacture of the United States, when returned after having been exported, without having been advanced in value or improved in condition. * * *

The Board of General Appraisers sustained the protest, and the Government appealed.

It appears from the uncontradicted evidence that the forced-draft fans with the engines attached constitute a finished mechanical device for the forcing of air through a heater box into the furnaces, which are a part of the propelling machinery of vessels. The importation when imported was a complete machine, and to enable it to accomplish the mechanical result for which it was made, nothing more was required than to connect it with the furnaces and start the engines. As imported the forced-draft fans and engines, when assembled, were ready for final use, and as further processing, additions, changes, or modifications were not needed to fit them for the propulsion of a current of air, the ultimate purpose of their manufacture, they were in no sense of the term materials. In other words, at the time of importation the materials composing the fans and engines had been already so far processed, changed, and modified that such materials were converted into a finished mechanical device, and taken out of the category of materials. That mechanical device, it is true, was designed in this case to be an auxiliary of the propelling machinery of vessels and to that extent might be regarded as a part of such machinery. But it was a part which was not only a completed part, but a complete machine, capable of other and independent uses. It was not a part in the sense that it was available for the *making or building* of any machine, or in the construction or manufacture of any other article or commodity destined for the use of the ultimate consumer. We therefore hold that the forced-draft fans and engines are not materials for the construction of vessels or for the building of their machinery. There is nothing in the case of United States *v.* Kennedy & Moon (7 Ct. Cust. Appls., 442; T. D. 37010) in conflict with these views or which holds that materials processed into a completed device, contrivance, or article ready for ultimate use are still materials.

As to the claim that the engines are articles of American manufacture exported from the United States, and returned thereto, without having been advanced in value or improved in condition, we are satisfied, after a careful examination of the record, that the evidence is wholly insufficient to warrant the making of any such finding. The affidavit of J. P. Stuart, the Canadian export entry,

and the Canadian consumption entry, upon which the importers rely to establish the right of the importation to free entry, do not prove that the engines were produced or manufactured in the United States, or that they were returned thereto after exportation without having been advanced in value or improved in condition. The nearest approach to evidence furnished by any of these documents as to the place of manufacture is the statement in the Canadian export entry that the engines were originally of American manufacture, and that they were shipped to Canada "for connection to the fans." That statement, however, is vouched for by no one, inasmuch as the signed and verified certificate attached to the export entry certifies to the truth of those statements *only*, which relate to the *kind, quantities, values,* and *destination* of the articles exported. The record is silent as to whether the engines were or were not advanced in value while in Canada.

Not only did the importers submit no evidence to the board showing the place of manufacture and the value and condition of the engines on importation, as compared with their value and condition on exportation, but they utterly failed to comply with the Treasury regulations prescribed for the admission free of American goods returned.

The affidavit of Stuart, which may be considered as the declaration of the foreign shipper, said nothing as to the place of production or manufacture of the engines. No declaration whatever that the engines were the product or manufacture of the United States was filed with the entry or made by the owner, importers, consignee, or by the agent of any of them. Moreover, no certificate of exportation was furnished to the collector of customs at the port of entry, although it does not appear that the port at which the engines *reentered* the United States was the same port as that from which they were exported. It is evident, therefore, that article 333 of the Treasury Regulations of 1915, was not complied with and on that ground alone it seems to us that the engines must be denied free entry as a product or manufacture of the United States. United States *v.* Goldberg (3 Ct. Cust. Appls., 394; T. D. 32986); United States *v.* Rettig et al. (2 Ct. Cust. Appls., 537; T. D. 32254); United States *v.* Saunders (6 Ct. Cust. Appls., 86; T. D. 35337). But however that may be, no evidence was submitted to the board that the engines were of American manufacture, and neither was there anything before the board which would justify the conclusion that they had not been advanced in value and improved in condition while in Canada, and consequently it can not be held as against the collector's decision that they are within the terms of paragraph 404.

The decision of the Board of General Appraisers is reversed.