TODD SHIPYARD CORPORATION *v.* UNITED STATES (No. 2074).[1]

1. MATERIALS AND MANUFACTURES—SHIPS' PARTS AND MATERIALS.

Merchandise known as "marine surface condensers," imported for the purpose of being used in connection with steam engines of American vessels to condense the steam and permit of its reuse, the only thing necessary to their operation being their attachment to one or two pumps and the introduction of the steam, are finished mechanical devices. They are not admissible free of duty under subsection 5, paragraph J, section IV, tariff act of 1913, as materials necessary for the building of the machinery of American vessels, but are dutiable under paragraph 167 as manufactures of metal.

2. STANDARDIZED INTERCHANGEABLE PARTS OF ENGINES.

The case of United States *v.* Hannevig (10 Ct. Cust. Appls., 124; T. D. 38384) is distinguished from the case at bar by the fact that the standardized interchangeable parts of engines held free there were necessary to the operation of the engines, while the condensers in this case are not so necessary, and it does not appear that any particular pump was manufactured for the express purpose of fitting them.

## United States Court of Customs Appeals, February 4, 1921.

APPEAL from Board of United States General Appraisers, Abstract 43853.

[Affirmed.]

*Brooks & Brooks* and *Ernest F. A. Place* (*Frederick W. Brooks, jr.*, of counsel) for appellant.

*Bert Hanson*, Assistant Attorney General, for the United States.

[Oral argument Jan. 21, 1921, by Mr. Place and Mr. Hanson]

Before SMITH, BARBER, DE VRIES, and MARTIN, Judges.

BARBER, Judge, delivered the opinion of the court:

The single question necessary of decision here is whether or not two articles of merchandise, denominated in the record as "two marine surface condensers," are dutiable as assessed under paragraph 167 of the act of 1913 as manufactures of metal, or are entitled to free entry under subsection 5, paragraph J, section IV of the same act, which we quote:

That all materials of foreign production which may be necessary for the construction of naval vessels or other vessels of the United States, vessels built in the United States for foreign account and ownership, or for the purpose of being employed in the foreign or domestic trade, and all such materials necessary for the building of their machinery, and all articles necessary for their outfit and equipment, may be imported in bond under such regulations as the Secretary of the Treasury may prescribe; and upon proof that such materials have been used for such purposes no duties shall be paid thereon.

It is established that a condenser of the kind under consideration is a cylindrical vessel made from metal in which the exhaust steam from an engine is condensed so that it may be used again in the boiler. The condenser has hollow tubes running through it, in which tubes cold water (sea water as to these two particular condensers) is to be circulated. The exhaust steam from the engine is conducted

[1] T. D. 38624 (40 Treas. Dec., 88).

to this condenser, where it is brought in contact with the tubes containing the cold water, as a result of which it is condensed, falls to the bottom, and by pump is returned to the boiler supply.

In its imported condition the condenser is a finished article. In operation, when it is connected with the engine, one or two pumps are required to maintain the supply of cold water in the condenser and to return the condensate for use in the boiler.

The Board of General Appraisers overruled the protest, following specifically their opinion in Abstract 43846, which, in turn, was based upon several there cited cases decided in this court.

The importer's contention here in substance is, that the ultimate purpose of the manufacture of these condensers is to operate them in the condensation of steam; that, as imported, they will not so function; that to enable them to do so it is necessary to make additions to them and connect them with an engine; from all which it is concluded that they are not finished, mechanical devices.

With this conclusion we can not agree. Their designed function is to condense steam. To enable them to do this cold water must be introduced into their tubes. When this is accomplished and the steam is introduced they function. The pump necessary to fill the tubes of each with cold water is hardly an addition to a condenser, but, on the record, is rather an independent finished mechanism. There is nothing in the record to suggest, nor is it claimed upon argument, that any particular pump was manufactured for the express purpose of fitting these especial condensers, and those that were connected therewith appear to have been standard pumps of domestic manufacture, made with no reference whatever to the imported condensers, but rather designed for general use. Neither were the condensers designed to be used on or to become parts of any particular engines. The engines to which they were attached function without them, and so do the boilers which supply the steam for driving the same. A steam engine can not function until steam is developed and introduced into its cylinders from the boiler. A boiler, in turn, can not generate steam until water is introduced into it and heat applied thereto. Both the engine and the boiler, however, are finished and ready to perform their respective functions before steam reaches the cylinders of the one, or water is introduced into the tubes of and heat thereto applied in the other. Neither a finished engine nor a boiler could be said to be an addition to or a part of the other, but are finished mechanical devices, and in like manner we are unable to see why these condensers are not equally such.

We think this case is governed by United States v. Reid (10 Ct. Cust. Appls., 85; T. D. 38357) and United States v. Carlin (10 Ct. Cust. Appls., 83; T. D 38356).

In the former case it was said that imported forced-draft fans with engines attached, designed to force air through a heater box into a

furnace, and which were complete machines when imported, were not materials for the building of machinery of vessels within the meaning of subsection 5. It was pointed out that they were complete machines, but they were no more complete in any sense than are these condensers.

Nor do we consider that the case of United States *v.* Hannevig (10 Ct. Cust. Appls., 124; T. D. 38384) makes against this conclusion. In that case it was held that standardized, interchangeable parts of engines were materials for the building of engines, but, as already pointed out, these condensers are not such materials. They are not necessary to enable either the engine or the boiler to completely perform its function.

The judgment of the Board of General Appraisers is *affirmed*.