PLATT & Co. *v.* UNITED STATES (No. 2168):[1]

SHIPS' EQUIPMENT—PROPELLER GOVERNORS.

>  It being shown that a universally used and necessary attachment for a ship's propeller shaft is a governor to keep it from racing when the propeller is out of the water, such governors for American ships should have been admitted free of duty under subsection 5, paragraph J, Section IV, tariff act of 1913, and should not have been assessed with duty as manufactures of metal under paragraph 167.

## United States Court of Customs Appeals, November 13, 1922.

APPEAL from Board of United States General Appraisers, Abstract 44874.

[Reversed.]

*Allan R. Brown* for appellants.
*William W. Hoppin,* Assistant Attorney General (*George F. Lamb,* special attorney, of counsel), for the United States.

[Oral argument October 5, 1922, by Mr. Hoppin and Mr. Brown.]

Before SMITH, BARBER, and MARTIN, Associate Judges.

BARBER, Judge, delivered the opinion of the court:

The merchandise involved in this case is Aspinall governors. Their function is expressed in the language of a witness, the truthfulness of whose testimony is not controverted. He said, referring to a governor of this class, that—

>  it is a device to control the shaft; that is, the propeller shaft. As the ship rises out of the sea if they can not control it why the propeller races itself to destruction. You see it is arranged—the propeller is arranged to get a certain speed from the resistance of the waves, and soon as it is exposed it would race itself. * * * so soon as it goes above a certain speed (it) gives the propeller the same speed it would have in the water.

He further testified that governors were essential parts of marine engines and used on all ships. These are a patented device and attached to the propeller shaft, which, of course, is an essential part of the machinery of a ship.

These governors were classified and assessed as manufactures of metal under paragraph 167 of the tariff act of October 3, 1913, which it is unnecessary to quote, and are claimed to be free of duty under subsection 5 of paragraph J of Section IV on the ground that they are materials necessary for the construction of vessels built in the United States, or materials necessary for the building of their machinery.

Subsection 5 reads as follows:

>  That all materials of foreign production which may be necessary for the construction of naval vessels or other vessels of the United States, vessels built in the United States for foreign account and ownership, or for the purpose of being employed in the foreign or domestic trade, and all such materials necessary for the building of their machinery and all articles necessary for their outfit and equipment, may be imported in bond

[1] T. D. 39319.

under such regulations as the Secretary of the Treasury may prescribe; and upon proof that such materials have been used for such purposes no duties shall be paid thereon.

Uncontroverted evidence was introduced establishing that these governors were used as contemplated by the subsection. The bond provided for therein was not given, because the collector refused to accept the same. He contended that subsection 5 was not applicable, and compelled the importers to pay duties before the goods were delivered.

The Government, however, concedes that no question arises on this phase of the case, and the issue resolves itself into the query as to whether the imported governors are materials necessary for the construction of vessels built in the United States, or materials necessary for building their machinery.

We think the record establishes that governors are essential parts of marine engines.

It seems that a marine engine without a governor equipment would be incomplete for effective and up-to-date navigation by steam power. The possibility of destruction of the propeller in a storm at sea by reason of the absence of a governor would seem to be something that should be prevented, if human skill can do it, and as the automatic control afforded by these governors is shown to do just that thing, it follows that they were material necessary for the building of the ship's machinery. They are distinguishable from the fans referred to in United States v. Reid (10 Ct. Cust. Appls. 85; T. D. 38357) and the condensers in Todd Shipyard Corporation v. United States (10 Ct. Cust. Appls. 273; T. D. 38624), which devices did not appear to be necessary to the functioning of the engine at sea. They fall rather within the category of such merchandise as was under consideration in United States v. Hannevig (10 Ct. Cust. Appls. 124; T. D. 38384), where, among other things, standardized interchangeable parts of oil-burning marine engines were held to be materials necessary for the building of the machinery of ships. The fact that as imported they are a finished entity does not negative that conclusion, while the fact established here that they are essential to the proper operation of a marine engine we think justifies their classification under the statute invoked by the importer.

The judgment of the Board of General Appraisers is *reversed*.