NATIONAL TUBE COMPANY v. UNITED STATES

No. 8107.— 

Entry No. 239.

Third Division, Appellate Term

(Decided April 25, 1952)

*Gustave Springer* for the appellant.

*Charles J. Wagner*, Acting Assistant Attorney General (*Chauncey E. Wilowski*, special attorney), for the appellee.

Before CLINE, EKWALL, and JOHNSON, Judges; CLINE, J., not participating

JOHNSON, Judge: This application for review of the decision and judgment rendered by the trial court in *National Tube Company* v. *United States*, 26 Cust. Ct. 461, Reap. Dec. 7923, involves the value placed upon the alterations made in Canada to certain steel casings exported from the United States for that purpose. It appears from the invoice papers that 50 pieces of steel pipe, having an outside diameter of 5½ inches and a wall 0.304 inch thick, which were 35 to 45 feet long and altogether weighed 40,000 pounds, and 50 pieces, having an outside diameter of 7 inches, a wall thickness of 0.317 inch, a length of 35 to 45 feet each, and weighed 42,900 pounds, were invoiced and entered at a value of $50 per ton. To such invoice value was added the cost of processing in Canada of $284.47. The appraiser found that the "costs of further processing in Canada" amounted to $3,096.10, although deducting therefrom the cost of the incoming freight charges of $426.37, thus making the amount added to the invoiced value of the steel pipe $2,669.73, rather than the $284.47 added by the importer.

The facts in the case are not disputed. It appears that the appellant developed a process of producing an "80 minimum yield casing by a method other than adding alloys to the steel" which was called "warm work casing." The company encountered difficulty in straightening this casing without damaging the collapsed valves which were very important in a premium product used in deep wells. The appellant, in seeking a method to overcome such difficulties, contacted Hydropress, Inc., of New York City. The engineers in that company informed the appellant that the Aluminum Co. of Canada owned a machine used to stretch aluminum shapes which was sufficiently powerful to stretch the steel casing and suggested that jaws could be designed to insert in the machine, enabling it to hold the casing during the stretching operation. Accordingly, an engineer of Hydropress, Inc., designed certain grip jaws to hold the tubes during the stretching process and plugs to insert in the ends of the tubes to prevent injury.

Hydropress, Inc., rendered a bill to the appellant herein, for the expenses incurred in the stretching operation undertaken in Canada, as follows:

| | | |
|---|---:|---:|
| One Complete Set of Grip Jaws With Accessories | | $1, 489. 80 |
| Sixteen (16) Aluminum Plugs | | 678. 24 |
| Expenses of Montreal Office | | 100. 00 |
| Expenses charged by Aluminum Co. of Canada: | | |
| Labor | $291. 79 | |
| Machine charge | 109. 90 | |
| Incoming transportation | 426. 37 | 828. 06 |
| | | $3, 096. 10 |

The appraiser adopted the above figures as the value of the alterations and deducted $426.37 as a nondutiable charge. Counsel for the appellant admits that the labor charge and machine charge totaling $401.69 should have been added as the cost of labor and materials. The machine charge presumably is the price fixed by the Aluminum Co. of Canada for the use of the stretching machine.

Counsel for the appellant denies, however, that the cost of the grip jaws with accessories, the aluminum plugs, and the expenses of the Montreal office of Hydropress, Inc., bears any relation to the value of the repairs or alterations.

Counsel for the Government, on the other hand, insists that the value of the so-called alterations in Canada included all of the items in the foregoing bill of Hydropress, Inc., except the cost of incoming transportation, citing as authority the case of *Oxford University Press, N. Y., Inc.* v. *United States*, 36 C. C. P. A. 102, C. A. D. 405. Both the plaintiff and defendant below cited the case of *United States* v. *Wilbur G. Hallauer*, 24 Cust. Ct. 568, Reap. Dec. 7804, which was affirmed in *Wilbur G. Hallauer* v. *United States*, 27 Cust. Ct. 432, Reap. Dec. 8045, and is now upon appeal to the Court of Customs and Patent Appeals, *Wilbur G. Hallauer* v. *United States*, suit 4711.

The court below found the analogy between the *Oxford University Press* case, *supra*, and the case in question "so compelling that the principle thereof must be held controlling of the question," as the equipment in each case was "designed specially for the production of certain definite articles," and found that the value of the alterations based upon their cost of production, as defined in section 402 (f) of the Tariff Act of 1930, was $2,669.73.

This court is unable to agree with the trial court that there is any analogy between the *Oxford University Press* case, *supra*, and the case now before us. Nor do we think that the situation presented here may be compared with that before the court in the *Wilbur G. Hallauer* case, *supra*.

In the case of *Oxford University Press*, *supra*, the merchandise consisted of unbound books in sheets invoiced as "5,000 Oxford Dictionary of Quotations." It was invoiced and entered at a value

of 6 shillings sterling per copy, based upon the cost of production plus charges for packing and marking. The appraiser found such cost to be 8 shillings 9 pence per unit. In arriving at the cost of production, the exporter based the current costs of the 5,000 copies upon the current costs of 20,000 copies and the nonrecurring costs on the basis of 65,000 copies, although only 20,000 copies had been printed. The issue there was whether or not the entire nonrecurring costs should have been included with the current costs on 20,000 copies. These nonrecurring costs consisted of "composition, editorial, correction and proof-reading, plates, translations, indexing, permission fees and royalties." These nonrecurring costs, of course, including the plates, entered into and were a part of the value of such sheets. However, the unbound books in question could not possibly be in existence without the plates and the nonrecurring costs entering into same, such as composition, editorial work, the correction costs, and proof-reading costs. Such costs are an intrinsic part of the cost of production of the books, and every book produced from such plates embodies the proportionate part of those costs.

In the case at bar, the situation is entirely different. Here, we have certain steel casing which was exported for the purpose of alterations. The identical steel tubing was returned to the United States. Under the special provisions of paragraph 1615 (g) of the Tariff Act of 1930, as amended by the Customs Administrative Act of 1938, a duty is provided upon any article exported from the United States for repairs or alterations upon *the value of the repairs or alterations* at the rate at which the article itself would have been subject if imported in its altered or repaired condition. Clearly, the value of the stretching machine owned by the Aluminum Co. of Canada or the value of any parts specially supplied therefor, in order to adapt such machine to undertake the alteration for which the casings were shipped to Canada, does not bear any relation to the value of the repairs or alterations. However, a charge for the use of the stretching machine, which would necessarily include a charge for the installation and use of the parts specially designed to hold the casing while being stretched, would enter into such value. According to exhibit 1, such charge appears as "Machine charge $109.90." It would be inconsistent for the court to hold that the grip jaws with accessories and the aluminum plugs specially supplied for use upon the stretching machine were a part of the value of the alterations without holding that the stretching machine itself was also a part of such value, inasmuch as both the machine and the parts equally entered into the operation of stretching the pipe. One might go so far along such line of reasoning as to consider that the factory building in which the machine was housed also entered into the value of the stretching machine. All that could possibly become a part of the value of the altered goods would be

a charge for use of the machinery. The ownership of the machine or any part thereof is entirely immaterial.

The *Wilbur G. Hallauer* case, *supra*, involved unsorted apples shipped to Canada and returned cleaned, sorted, individually wrapped, and packed in Canadian boxes. The importer claimed that only the cost of wiping and transfer of the fruit from the boxes in which they were imported to the wiping machines should be considered as a part of the value of alterations, while the Government contended that not only were such costs a part of the value but also the cost of sorting after completion of wiping, the cost of Canadian liners and pads, the costs attaching to the wrapping and packing in boxes for shipment, the cost of Canadian packing boxes, and miscellaneous expenses. It is at once apparent that the costs there in controversy were all directly related to the labor of cleaning and sorting the apples in order that they might be returned to the United States in the altered condition contemplated when shipped to Canada. Had the Government contended that the value of the sorting and wiping machines or a proportionate part thereof should enter into the value of the apples returned to the United States, and the courts sustained such view, the *Hallauer* case, *supra*, would have been pertinent to the issue here.

The question before the court is what is the value of the repairs or alterations. The trial court noted with approval the construction placed upon the "value of the repairs" in a letter from the acting commissioner of customs to the collector of customs at New York, 60 Treas. Dec. 273, T. D. 45084. Therein, the commissioner states:

The value of repairs should, whenever possible, be arrived at in accordance with section 402 of the tariff act of 1930, particular attention being invited to subdivision (f) of that section. When the repairs consist of labor only, and no materials, the value of the labor should be considered to be the value of the repairs. * * * Although there may not have been any cost to the importer, that is, any charge made upon him for the work done, the repairs should, nevertheless, be considered to have a value, which should be the value of the materials used and/or the labor consumed in making the repairs.

This court is in hearty agreement with the foregoing statement of the acting commissioner of customs. When labor only is expended, the value should be the cost of the labor, and when there are materials used, that means materials consumed in, or made a part of, the article returned to the United States, the cost of such materials should be added. We do not believe that the foregoing interpretation of the law by the acting commissioner was intended to include as materials parts of machinery which were constructed in order that the repairs or alterations could be made and which had no connection with or formed any part of the merchandise returned to the United States. If such a construction were intended by the acting commissioner, we hold that it does not reflect the plain language of the statute.

In the case of *Austin, Baldwin & Co.* v. *United States*, 7 Ct. Cust. Appls. 186, T. D. 36505, it was held that money expended in the production of phonograph records for "locating room, moving and hire of piano, wages of boy at laboratory, and rent of laboratory, furniture, and curtains" was not a part of the "costs of materials and of fabrication." The word "materials" was defined by the courts many years ago to mean "that from which an article is made up." See *Altman & Co.* v. *United States*, 5 Ct. Cust. Appls. 170, T. D. 34251. See also *United States* v. *Carlin*, 10 Ct. Cust. Appls. 83, T. D. 38356. The lexicographers define the word "material" as "1. The substance or substances, or the parts, goods, stock, or the like of which anything is composed or may be made; as, raw *materials*." See Webster's New Collegiate Dictionary, page 518.

We are not in agreement with the trial court in its statement that "Any element which may properly fall within said section 402 (f) must be considered in determining the value of the alterations effected upon the merchandise before the court." It will be noted that the acting commissioner merely directed that the value of the repairs should, *whenever possible*, be arrived at in accordance with the cost-of-production portion of section 402. The trial court has not adhered to the foregoing statement in finding value, inasmuch as the value returned by the appraiser merely includes the cost of materials, and of fabrication, manipulation, or other process employed in producing such merchandise, and fails to make a return of the usual general expenses, the costs incident to placing the merchandies in condition packed ready for shipment to the United States, or any addition for profit. Manifestly, the addition of the parts of machinery in question here could not be classed as usual general expenses, inasmuch as such parts would come under extraordinary expenses. Certainly they were not expenses usual to the production of such repairs.

It has been held that the general expenses to be added are the usual general expenses incurred in the production of "such or similar merchandise." See *United States* v. *Henry Maier*, 21 C. C. P. A. 41, T. D. 46378.

The appellate court in the case of *United States* v. *Jovita Perez*, 36 C. C. P. A. 114, C. A. D. 407, approved the method used by the Government in determining the cost of production of certain flavoring sirup from the selling price of $296. per unit of six barrels, delivered in the United States. First, the nondutiable charges of $90.45 were deducted, then the cost of labor and materials, and the overhead, amounting to $101.12, and the packing charges of $5.18. The remainder of $99.25 was labeled as the profit. Although the plant used for the production of the flavoring sirup was especially constructed in Mexico, the appellate court disregarded the contention that there would be little, if any, profit when the foreign plant was liquidated.

It also disregarded evidence of extraordinary expenses which occurred in connection with the production of the flavoring sirup. Had the court considered such materials to be a part of the cost of production of the flavoring sirup, the amount found to be the profit would have been materially changed.

For the reasons stated, this court is of the opinion that the appraiser erred in including the cost of parts of machinery as a part of the value of the alterations of the steel casing in question, and we make the following findings of fact:

1. The merchandise consists of steel casing of American manufacture which had been shipped to Canada for certain alterations and returned to the United States after processing.

2. That the alterations consisted in stretching the casing in order to remove certain defects.

3. That the only costs entering into the stretching process consisted of the cost of labor and the amount charged for the use of the stretching machine.

4. The value at which the steel casings were entered was $50 per ton, plus $284.47 for alterations.

5. The importation was appraised at $50 per ton, plus $3,096.10 for processing in Canada, less from such amount the transportation charges of $426.37.

6. The charge made for processing the steel casings in Canada amounted to labor—$291.79, and machine charge—$109.90, total $401.69.

7. That the amount expended to enable the stretching machine to perform the required alteration was as follows:

| | |
|---|---:|
| One Complete Set of Grip Jaws with Accessories | $1,489.80 |
| Sixteen Aluminum Plugs | 678.24 |
| Expenses of the Montreal Office of Hydropress, Inc., who designed the foregoing | 100.00 |
| | $2,268.04 |

We therefore conclude as matters of law:

1. That the proper basis of value of the alterations in question is the sum of the cost of fabrication and the general expenses incurred in the production thereof, which necessarily would include the profit of the repairer.

2. That the amount expended by the appellant for the purchase of 1 complete set of grip jaws with accessories and 16 aluminum plugs, together with the expenses of the office of the designer of such equipment, consists of extraordinary expenses incurred and forms no part of the value of the alterations.

3. That the value of the repairs or alterations upon the basis of such cost of the labor, materials, and general expenses, in conformity

with T. D. 45084 and section 1615 (g), *supra*, is $401.69 as set out in paragraph 6 of the findings of fact.

Judgment will therefore be entered reversing the decision and judgment of the trial court, and holding the value of the alterations to be as set out in paragraph 6 of the findings of fact.