Anita KRIENKE, Appellant,

v.

SOUTHWESTERN SUPERIOR PRODUCTS CORPORATION, Appellee.

No. 4221.

Court of Civil Appeals of Texas.

Waco.

March 19, 1964.

Rehearing Denied April 9, 1964.

Fox, Fondren & Sapp, Taylor, for appellant.

William S. Lott, Georgetown, Wroe Owens and Phil Mockford, Austin, for appellee.

McDONALD, Chief Justice.

This suit was instituted by appellant against appellee for the purpose of obtaining construction of a "sand, gravel, limestone, dolomite and rock lease", and a declaration of the rights, duties, and liabilities of the parties thereunder. Appellant is lessor, and appellee is assignee of the original lessee. Such lease is dated August 19, 1948 and provides for a primary term of 20 years, with options to lessee to renew for 20 additional years. Pertinent portions of such lease are:

"Sand, Gravel, Limestone, Dolomite and Rock Lease. * * *

"1. Lessor (Krienke) for and in consideration of the sum of $100.00 cash in hand paid * * *, and of the royalties herein provided, and the other agreements hereinafter set forth, hereby grants, leases, and lets exclusively unto Lessee for the purpose of investigating, exploring, prospecting, *mining, producing, treating, removing* and disposing of as desired, sand, gravel and rock (it is agreed and understood that the words 'sand, gravel, and rock', when appearing in this Lease, shall and do include sand, gravel, rock, *limestone,* and *dolomite,* and each of them of any and all kinds, and any combination of any one or more of them) and any one or more of them or any combination thereof, for construction, industrial, chemical, agricultural, and all other uses, and any one or more of them or any combination thereof, together with the right and privilege of building and maintaining roads, *installing and maintaining equipment* of any and all kinds for any one or more of said purposes, and the right of constructing and maintaining suitable shed, sheds, building or buildings, for the protection and convenience of the workmen * * * and the right of constructing and maintaining suitable storage for equipment and supplies, and the constructing and maintaining and operating of the *necessary structures, roads* and *equipment* thereon to *produce, store, save, take care of, treat,* transport, and own said products * * * the following described land in Williamson County, Texas, to-wit: * * *

"2. It is expressly understood and agreed that the Lessee may place on said premises any and all *machinery, appliances, equipment, structures,* wagon roads, truck and automobile roads, and such other objects and things which may be necessary or convenient for use in *mining, quarrying, producing, treating, storing, loading, and transporting* sand, gravel and rock and any one or more of them, or any combination thereof so mined by Lessee upon said premises, and *for such other operations as may be incident to* the mining, quarrying and removing of such materials * * *.

"4. * * * All material *processed* shall remain the property of Lessee until removed from the premises * *." (Emphasis added).

The original lessee commenced quarrying operations under the lease in 1948, but hauled the rock and dolomite to a location some 3 or 4 miles away and off of lessor's land for treating and processing of the stone. One of the principal uses of the limestone and dolomite quarried is to convert it into "dead burned dolomite" or "dolomite lime."

In 1963, lessee erected on the leased premises a large plant or factory, for the purpose of converting the raw dolomite stone into "dead burned dolomite." Such plant and equipment removed dirt from the quarried stone; reduced the stones in size by blasting; crushed the stone into smaller pieces; screened the crushed stone; conveyed the crushed stone into a kiln or dryer. The kiln treats the stone by subjecting it to high temperatures which drive off certain gases. Iron scale is introduced into the kiln which causes the stone to fuse harden as it reaches certain temperatures at the discharge end of the kiln. The end product, "dead burned dolomite" or "dolomite lime," has commercial and industrial uses.

It was and is the contention of the appellant landowner, that the lease was simply a quarry lease permitting lessee to extract dolomite and rock from the premises and haul same away; and that lessee is not permitted under the terms of the lease to build a manufacturing plant on the premises, or conduct a manufacturing operation on the premises.

Trial was before the court without a jury, which after hearing, entered judgment construing the lease to permit the plant and operations of lessee.

Appellant lessor appeals on 6 points, contending that the trial court erred in construing the lease, to permit the lessee's plant for manufacturing "dead burned dolomite."

The trial court filed Findings of Fact which described the processing and kiln treatment the raw dolomite received in appellee's plant, substantially as above set forth, and further found in substance:

1) The operations and procedures of defendant is the only accepted procedure for producing and treating dolomite for commercial and industrial uses.

2) Through the treatment of the raw dolomite by heat, it undergoes certain physical and chemical changes, and the resulting product is "dead burned dolomite", a dolomite, except in chemical language.

3) In this industry, the terms *"produce"*, *"treat"* and *"processed"* as employed in the lease are synonymous with the term *"manufacture."*

4) The raw dolomite loses 50% of its weight by volume as a result of the operation.

The trial court filed Conclusions of Law in substance:

1) The actions of defendant to install a kiln, equipment and buildings on the leased premises are expressly permitted by the lease.

2) The operations of defendant are operations for producing and treating dolo-

mite on the leased premises and such operations are expressly permitted by the lease.

3) The basis for computing plaintiff's royalty shall be on the weight of the raw stone used to produce the end product.

Paragraph 1 of the lease, among other things, gives appellee the right to mine, *produce,* and *treat* dolomite; and to install buildings and equipment to *produce* and *treat* such products.

In paragraph 2 of the lease, lessee is expressly given the right to place machinery on the premises to *produce* and *treat* the rock.

Paragraph 4 of the lease contemplates that the rock, dolomite, and limestone will be *"processed"* on the premises.

The record reflects that the principal commercial use of the raw dolomite rock found on the premises is as "dead burned dolomite", and that the procedures of cleaning the stone, crushing the stone, and drying it in a kiln with iron oxide additive is the only way to make it commercially usable. The record further shows that as a result of the kiln operation the carbon dioxide content of the stone is driven off and that the resulting "dead burned dolomite" weighs only ½ the weight of the raw material.

The lease expressly permitted lessee to *produce, treat* and *process,* the raw dolomite on the premises. Funk & Wagnall's New Standard Dictionary defines *"produce"* to mean "that which is produced, brought forth, * * * or manufactured." 72 C.J.S., p. 1208 defines *"produce",* "as meaning to bring forth * * * to bring into being or form; to give being or form to; to manufacture * * *."

Substantially the same definition of *"produce"* is approved in the following cases: United States v. Montgomery Ward & Co., D.C., 58 F.Supp. 408; Armature Exchange v. United States, D.C., 28 F.Supp. 10; Spiller v. McGehee, C.C.A. (n. w. h.), 68 S.W.2d 1093; Calvert v. Phillips Chemical Co., C.C.A., Er. Ref., 268 S.W.2d 478.

Funk & Wagnall's New Standard Dictionary defines "treat" to mean " * * * apply a special process to * * * to apply chemical reagents to * * *." 87 C.J.S., 925 defines "treat": "to deal with or handle; to apply a special process to; to subject to some process with a special end in view; to subject to some action, as of a chemical reagent, * * * often to subject (a natural or manufactured article) to some process to improve its * * * usefulness." To the same effect is El Rio Oils (Canada) Ltd. v. Chase, 95 Cal.App. 2d 402, 212 P.2d 927.

Funk & Wagnall's New Standard Dictionary defines *"process"* to mean "a course or method of operations, natural or artificial, incident to the accomplishment of a result; a systematic series of actions in the production of something; as a metallurgical process * * *". 72 C.J.S., p. 976 defines *"process"* to mean "to subject to or treat by a special process; to subject especially raw materials, to a process of manufacture, development, preparation for the market, etc.; to convert into marketable form * * *. Processing is a flexible term and may refer to either chemical or physical changes in the thing acted upon * * * to subject to a process of manufacture, development or preparation for the market." To the same effect is Panhandle Constr. Co. v. Shireman, C.C.A. (n. w. h.), 80 S.W.2d 461.

From the foregoing, we conclude that the plant and operation of appellee lessee on the leased premises, were expressly permitted and authorized by the lease; that the Findings, Conclusions, and judgment of the Trial Court are correct. All of appellant's points and contentions have been considered and are overruled. The judgment of the Trial Court is affirmed.