177 So.2d 828

**STATE of Alabama**

**v.**

**FOUR STATES DRILLING CO., Inc., formerly known as Jett Drilling Co., Inc.**

**1 Div. 112.**

Supreme Court of Alabama.

Aug. 12, 1965.

**274**

Richmond M. Flowers, Atty. Gen., Willard W. Livingston and Herbert I. Burson, Jr., Asst. Attys. Gen., for appellant.

John W. McConnell, Jr., Armbrecht, Jackson, McConnell & DuMouy, Mobile, for appellee.

COLEMAN, Justice.

The controlling question in this case is whether certain casing, tubing, and other equipment, which is used in the operation of producing oil wells, constitutes a "machine used in . . . processing . . . tangible personal property," as such a machine is defined in the use tax law.

§ 789, Title 51, Code 1940, as amended prior to October 1, 1959, as here pertinent, recites:

"The storage, use or other consumption in this state of the following tangible personal property is hereby specifically exempted from the tax imposed by this article: . . . (p) Machines used in mining, quarrying, compounding, processing, and manufacturing of tangible personal property; provided that the term 'machines,' as herein used, shall include machinery which is used for mining, quarrying, compounding, processing or manufac-

turing tangible personal property, and the parts of such machines, attachments and replacements therefor, which are made or manufactured for use on or in the operation of such machines and which are necessary to the operation of such machines and are customarily so used. . . ."

§ 788, Title 51, Code 1940, as amended and made effective October 1, 1959, by Act No. 99, approved August 18, 1959; 1959 Acts, page 295; recites in pertinent part as follows:

"'Section 788. (a) An excise tax is hereby imposed on the storage, use or other consumption in this state of tangible personal property purchased at retail on or after the first day of October 1959, for storage, use or other consumption in this state at the rate of three percent of the sales price of such property, except as provided in subsections (b) and (c).

"'(b) An excise tax is hereby imposed on the storage, use or other consumption in this state of any machine used in mining, quarrying, compounding, processing and manufacturing of tangible personal property, including the parts of such machine, attachments, and replacements therefor which are made or manufactured for use on or in the operation of such machine, purchased at retail on or after the first day of October 1959, for storage, use or other consumption in this state, at the rate of one and one-half percent of the sales price of such machine or the parts, attachments, or replacements therefor.

" ' . . . . . . . . . . ' "

If the equipment here in question constitutes a machine used in processing tangible personal property, the equipment is exempt from use tax altogether during the period prior to October 1, 1959, and, after that date, is taxable under subdivision (b) of

§ 788 at one and one-half per cent instead of three per cent under subdivision (a).

The State assessed a tax of three per cent of the purchase price of the equipment for the entire two-year period.

The record discloses that the testimony presented orally before the trial court showed that oil in its natural state is a hydrocarbon, consisting of basic sediment or sand, oil, and gas, the percentage of each varying from place to place and time to time. Also present with the hydrocarbon is water in varying percentages from one per cent to ninety per cent. The equipment involved in this proceeding was installed and used in producing oil wells in the Citronelle Field in Mobile County. We understand that taxpayer does not claim exemption for conductor pipe which is concerned primarily with drilling. Two types of casing are at issue. The "surface casing," which in the Citronelle Field extends to a normal depth of approximately 1400 feet, serves the dual purpose of protecting the hole and anchoring the tubing. "Production casing," extending to the bottom of the well, a depth of approximately 11,000 feet in the Citronelle Field, houses the tubing or production string inside. Within the tubing and at the bottom of the well is located an engine and pump which operate by hydraulic action. This engine and pump are activated by a unit located on the surface that forces oil (known as power oil) through the tubing and casing, down to the engine at the bottom of the well. This function provides the hydraulic action by which the engine is operated. The engine and pump move up and down within the tubing a maximum of thirty inches. The upward stroke of the engine and pump creates a suction within the lower extremity of the casing which draws the oil and water from the adjacent sand strata into the tubing. At the same time, a liquid demulsifier, introduced into the power oil at the surface, flows down the tubing and is mixed with oil sucked into the tubing on the upstroke of the engine and pump. This demulsifier begins a chemical change or

process in the production oil, makes it flow more easily, and breaks down and separates the water from the oil, thereby "starting the process of making it into a marketable product." The power oil, the demulsifier, and the production oil (including the water and sediment) are then brought to the surface through the same tubing and casing where the entire mixture goes into a separator, where the gas is separated from the oil. The gas actually begins to change from liquid form to gas and to separate or come out of the solution with the reduction in the pressure as the compound approaches the surface. However, a small percentage of gas remains in the hydrocarbon until it is entirely separated in the separator. The oil and water pass to the treater where they are in turn separated. The oil then passes into the power oil tank where the cycle begins anew, i. e., the engine on the surface (power oil triplex) forces the oil into the tubing to activate the engine at the bottom of the well. The excess of the oil in the power oil tank passes off into a storage or stock tank and is there sold as marketable crude oil to the pipeline company. The only equipment involved in this controversy is the equipment through which the solution passes or which is used on the hydrocarbon *before* the mixture enters the separator. The above recited facts as they relate to appellee's modus operandi at the well site are not in dispute.

Taxpayer's witness, Norman, a graduate petroleum geologist since 1929, testified as follows:

"Q   In other words, the process of your separation of these various matters that are in solution, the gas and the water and the oil and the sand, the process of separating that to make marketable crude begins at the botton of the well?

"A   That's correct, that's when your chemicals mix with your product that need (sic) treating."

This witness also testified to the effect that no tubing and only a small amount of casing is installed in a dry hole, i. e., the equipment which taxpayer is claiming as exempt is not used in speculation but only in the actual production of marketable crude oil.

The question for determination, therefore, is whether the equipment below the surface of the ground actually "processes" the crude oil so as to bring that equipment within the use tax exemptions granted by the code sections noted above. The State contends that the equipment involved merely conveys or transports the crude oil to the surface where processing actually begins.

■ It is well established that tax exemption statutes are construed against the taxpayer. State v. Wertheimer Bag Company, 253 Ala. 124, 43 So.2d 824; Burgess-Haughton Enterprises, Inc. v. Haden, 274 Ala. 39, 145 So.2d 204.

In State v. Advertiser Company, 257 Ala. 423, 427, 428, 59 So.2d 576, 578, in a use tax case, this court adopted and approved the decree of the trial court, which, in pertinent part, recited as follows:

"'It will be observed that the language used in this exemption clause is broad and comprehensive in the use of the words, "compounding, processing, or manufacturing", used disjunctively, and was so intended by the Legislature, and designed to cover all industries and enterprises of that general nature, and to be liberally construed. This would seem to be further indicated by the inclusion herein of the words "mining and quarrying", which are not considered as either manufacturing or processing, since they apply to elements or products that are and remain in their natural state, but they are nevertheless brought within the exemption. So, too, the use of the words *"of tangible personal property"* is significant. [Italics supplied.]

"'..........

" 'And quoting from the definition in Webster's New International Dictionary, it defined "processing" as:

" ' "A series of actions, motions, or operations definitely conducing to an end, whether voluntary or involuntary; progressive act or transaction; continuous operation or treatment; a method of operation or treatment, esp. in manufacture; * * *

" ' "To subject to some special process or treatment. * * * To subject (esp. raw material) to a process of manufacture, development, preparation for the market, etc.; to convert into marketable form, as livestock by slaughtering, grain by milling, cotton by spinning, milk by pasteurizing, fruits and vegetables by sorting and repacking; * * * to make usable, marketable, or the like, as waste matter or an inferior, defective, decomposed, substance or product, by a process, often a chemical process; * * * d. to produce or copy by photo-mechanical methods; to develop, fix, wash and dry, or otherwise treat (an exposed film or plate)."

" ' . . . . . . . . . . ' "

In brief filed on behalf of the State, counsel ably and concisely states the argument as follows:

" . . . . The Appellant concedes that the item shown in the diagram marked Appellant's (Appellee herein) Exhibit 4 (R. p. 160) that are above ground are machines and attachments used in processing tangible personal property. *However*, the tubing and casing below the surface of the ground including the centrifugal pump (Appellant's, Appellee herein, Exhibit 3, R. p. 159) are mere conveyors of the oil. The processing *does not in fact begin until the crude oil passes into the 'separator and/or treater as required'.* (Appellant's Exhibit 4, R. p. 160). The Final Decree of the lower court (R. pp. 171–176) found crude oil to be tangible personal property. With this finding the Appellant is in accord. The lower court likewise found the Appellee (Appellant below) tc be processing tangible personal property. With this finding the Appellant is in partial agreement. The Court found that the processing began 11,000 feet beneath the surface. The Appellant disagrees with this finding. The Court likewise found as a consequence of its prior erroneous conclusion that the 'tubing, casing, demulsifier, inhibitor, tubing anchors, meters, packers,' etc., were machines used in processing of tangible personal property and exempt under Section 789(p), supra, prior to October 1, 1959, and subject to only the one and one-half percent levy under Section 788(b), supra, subsequent to October 1, 1959. The Appellant is in disagreement with this finding to the extent that the finding includes tubing and casing and adjuncts thereto which are used *to convey to (sic) crude oil to the surface to the point of processing.* Thus the area of controversy is narrowed and clearly defined for the decision of this Honorable Court."

Thus the State contends that processing does not begin at the bottom of the well and taxpayer contends to the contrary.

Under the quoted definition, processing is to subject to some special treatment, to prepare for the market, to convert into marketable form, to make usable, marketable, or the like.

Somewhere along the line from the bottom of the well to the storage tank, the mixture of sediment, sand, oil, gas, and water, as it occurs in nature, is subjected to a treatment that separates the oil from the other elements originally in the mixture. The testimony of the witness is that "the process of separating that to make marketable crude begins at the bottom of the well." We do not understand that this testimony is contradicted.

We do not think this process of separation is the same as the process in Southern

278

Natural Gas Co. v. State, 261 Ala. 222, 73 So.2d 731, where the court held that the extraction of some moisture and distillate was merely incidental to the transportation of the gas, and, therefore, the compressors which forced the gas along the pipe line were not exempt from use tax. In the Southern Natural Gas case, the court indicated that the gas was ready for use by the consumer before it reached the compressor. That is not the situation in the instant case. The natural hydrocarbon mixture is not ready for use by the consumer before it reaches the pump in the bottom of the well.

Neither does Alabama-Georgia Syrup Co. v. State, 253 Ala. 49, 42 So.2d 796, apply here. There the court held that certain platform trucks, used "in transportation from one point in the plant to another," were not exempt from tax. It is clear that no processing occurred during the transportation on the trucks. In the instant case, processing does occur during the transportation.

Nor do we think that the facts here are the same in substance as in Anderson & Sons Co. v. Glander, 154 Ohio St. 561, 97 N.E.2d 29, where a concrete mixer was mounted on a motor truck chassis. The court there held that the truck chassis was essentially a transportation instrumentality and was not employed "directly" in the production of tangible personal property for sale by manufacturing or processing, and, therefore, that the truck chassis was not tax exempt. In the instant case, the pump and other equipment held exempt are themselves employed in processing the hydrocarbon mixture as well as in transporting it.

Nor does Carter Oil Co. v. Blair, 256 Ala. 650, 653, 57 So.2d 64, 67, apply here. There the court observed:

".... We think it well to point out that it is not argued here that complainant was exempt from payment of use tax because the equipment is a machine used in 'compounding, process-

ing, or manufacturing tangible personal property'. Subdivision (p), § 789, Title 51, Code 1940, as amended."

In the instant case, taxpayer does argue that the equipment is exempt as a machine used in processing.

 We are of opinion that the evidence supports a finding that processing begins at the bottom of the oil well. Based on that finding, the decree, holding the equipment below the surface of the ground to be machinery used in processing tangible personal property, is correct and is due to be affirmed.

Affirmed.

LAWSON, SIMPSON, and GOODWYN, JJ., concur.