**LINWOOD STONE PRODUCTS COMPANY, Inc., Plaintiff-Appellant and Cross-Appellee,**

v.

**STATE DEPARTMENT OF REVENUE and William H. Forst, Director of Revenue, Defendants-Appellees and Cross-Appellants.**

No. 53873.

Supreme Court of Iowa.

March 10, 1970.

Lane & Waterman, by James E. Kelly, Davenport, for plaintiff-appellant and cross-appellee.

Richard C. Turner, Atty. Gen., Harry M. Griger, Asst. Atty. Gen., and Stephen J. Petosa, Asst. Atty. Gen., for defendants-appellees and cross-appellants.

LARSON, Justice.

This is an appeal from an assessment of sales and use taxes and penalty against plaintiff by Iowa State Tax Commission dated August 24, 1967. The State Tax Commission, predecessor to the defendant Department of Revenue, imposed a sales tax on diesel fuel used by plaintiff to operate vehicles and machines in its limestone mine. Plaintiff challenged that as-

sessment on the ground that it was exempt under section 422.42(3), 1962 Code. It also challenged the imposition of use taxes on certain industrial equipment allegedly used in processing, on the ground that it was exempt under the provisions of chapter 423 of the Code.

The trial court agreed with the State Tax Commission that the fuel was not used to produce power for processing, but held that three transformers, tank and legs, and two Hewitt-Robbins screens were equipment directly used in processing tangible personal property for resale, that they were not readily obtainable in Iowa and thus exempt from the Iowa Use Tax. It also held that certain shovel parts and a stationary compressor were not directly used in processing, were readily obtainable in Iowa, and were subject to the use tax. It further held that an exhaust conditioner was not used directly in processing and was subject to the use tax although not readily obtainable in Iowa. The Commission's administrative decision was modified to reduce the total sales and use tax, interest and penalty from $3,470.94 to $3,121.63. Being still unhappy, plaintiff appeals those decisions adverse to it, and the Department of Revenue cross-appealed as to the use tax exemptions granted on the transformers and the tank and legs. We affirm the trial court.

I. To better understand the issues raised in this appeal, it seems a statement concerning plaintiff's operation should be made. Linwood Stone Products Company, Inc. owns and operates a large limestone mine or quarry along with a limestone processing plant in Scott County, Iowa. From an open pit entrance one reaches the solid limestone, which is later to be processed into marketable tangible personal property. As limestone is removed, pillars approximately 35 feet square are left as supports and separate the rooms from which the stone has been removed, These rooms are approximately 40 feet wide and 18 to 22 feet high. They are some 120 feet below the earth's ground surface. Eighty feet of dirt and 40 feet of rock are overhead.

Plaintiff utilizes several machines in this underground activity. A machine for drilling holes in the rock operates on compressed air furnished by a stationary compressor in the mine. Dynamite is placed in the holes and about 800 tons of rock is blown down and broken up by each blast. Diesel-powered loaders place 25 tons of "shot rock" at a time onto diesel-powered trucks which haul the rock to the crushers located about half a mile away, where it is further broken up and graded for size on specially-designed screens. It is transported to the screens on a rubber-covered conveyer belt electrically powered. Various assorted sizes of stone are stockpiled at the mine. site. The rest is taken by truck to the lime plant where it is treated by heat in kilns and then run through a large storage tank, with screens to further sort sizes, and placed in different bins. Some pulverized rock is further treated by adding water to obtain hydrated lime. All of these products are reasonably classified as marketable personal property, from flat rock obtained right after the blasting to calcium sulphate at the end of the operation. That the operation from stone crusher to storage bin is processing is not questioned, so perhaps the first and most vital question presented to us in this appeal is, when does plaintiff's processing commence? Appellant contends this process commences when the holes are drilled in the solid, homogenious mass of limestone or at least when it is blasted into small pieces previous to being transported out of the mine. The appellees contend that, until the rock is placed into the crusher, there is no change in the raw material and that the operations in the mine are only preliminary and preparatory and are not processing as is designated and contemplated in the exemption provisions of the state sales and use taxes.

II. The term "processing" is not defined in chapters 422 or 423 of the Code. Therefore, as has been done in previous cases, we follow the mandate provided in Code section 4(1) which requires the meaning to accord with the approved usages of

the language. Fischer Artificial Ice & Cold Storage Co. v. State Tax Commission, 248 Iowa 497, 81 N.W.2d 437; Kennedy v. State Board of Assessment and Review, 224 Iowa 405, 276 N.W. 205.

Although various definitions are referred to in like cases, including one found in Webster's New International Dictionary, Second Edition 1954, the term used in our tax sections must, of course, be in accord with the legislative intent as expressed by the legislation involved. Generally, then, "processing" as used in chapters 422 and 423 of the Code refers to an operation whereby raw material is subjected to some special treatment by artificial or natural means which changes its form, context, or condition, and results in marketable tangible personal property. For other definitions of "processing", see Cochrane v. Deener, 94 U.S. 780, 788, 24 L.Ed. 139, 141; National Tube Co. v. Glander, 157 Ohio St. 407, 410, 105 N.E.2d 648, 650; State v. Four States Drilling Co., 278 Ala. 273, 177 So.2d 828, 831. Also see 34 Words and Phrases, p. 261, and pocket parts; annotation 30 A.L.R.2d 1439-1460. In Cochrane, supra, the United States Supreme Court defined it as "a mode of treatment of certain materials to produce a given result. It is an act, or a series of acts, performed upon the subject-matter to be transformed and reduced to a different state or thing."

■ Of considerable importance, then, is the question as to whether the legislature, by the language used in chapters 422 and 423, considered as raw material used in processing only tangible personal property, or included real property as well. Although not directly restrictive of real property, it seems clear from the language used in section 422.42 and in section 423.1(1), the reference to tangible personal property or other matter used in processing excludes real property from the exemptions provided therein.

In the recent case of Chicago, B. & Q. R. Co. v. State Tax Comm., 259 Iowa 178, 181, 142 N.W.2d 407, 409, we noted that al-though processing was not defined, property used in processing is referred to and set out in subdivisions (a), (b), (d) and (d) thereof. None refer to real property.

In Kennedy v. State Board of Assessment and Review, supra, it was urged that fertilizer used in growing crops qualified for the processing exemption from sales tax. The court therein said the sales tax statute refers to processing of tangible personal property, that the placing of fertilizer in the soil makes it a part of the real estate, and that if this is an act of processing, it is processing of the real estate and not of tangible personal property within the statute.

■ In other words, appellees contend that, until there is a severance of the raw material later to be processed from the real estate, processing as contemplated in these tax exemption statutes cannot commence, and that here after the severance by blasting, the form, context or condition of the limestone rock was not changed until it reached the company crusher. We are inclined to agree and, in view of no persuasive indication of a legislative intent to the contrary, so hold.

In so holding, we are aware of the fact that Iowa, unlike some other states, has no specific provisions relating to mining and quarrying and thus no tax exemptions for operations which might otherwise constitute processing. The mining operation of severance must, therefore, precede processing of tangible personal property, and it is not helpful to appellant that the same act of severance does change the form of the limestone rock.

Appellees cite two cases which seem to support our conclusion in other jurisdictions. In National Tube Co. v. Glander, supra, the Ohio court did not consider severance of trees as processing and denied use tax exemptions on chain saws used to drop and trim them. In Tulsa Machinery Co. v. Oklahoma Tax Commission, 208 Okl. 138, 253 P.2d 1067, the court refused to consider blasting of rock so as to permit its

removal from the ground by power shovels as the commencement of processing. It held dirt removal above the stone, blasting of the stone to permit removal by machines, and the conveyance of the removed stone to the crushers, were preliminary to manufacturing by process. Insofar as the act of severance from real estate is concerned, it is similar to our case where, until severed, the limestone could not be removed from the mining area. There, as here, after severance, the raw material was not changed in any way until it was placed in the crusher and, although it is true the blast did change the form of the 800-ton rock, that change was only incidental to the severance and did not constitute the first step in processing tangible personal property so as to entitle the appellant to sales or use tax exemptions for fuel or machines used before the crushing event. Also see annotation in 17 A.L.R.3d, § 27(a) and (b), pp. 68–74.

Nevertheless, we are satisfied that, if acts of severance such as are found in quarrying, mining, or forestry, are to be included in processing, it should be done by the specific act of the legislature, not by us.

■ III. Taxation, of course, is the rule, not the exception, and tax exemptions are strictly construed against the taxpayer, with doubts resolved against exemptions. Kennedy v. State Board of Assessment and Review, supra, 224 Iowa 405, 409, 276 N.W. 205, 207; Chicago, B. & Q. R. Co. v. State Tax Comm., supra, 259 Iowa 178, 142 N.W. 2d 407; Fischer Artificial Ice & Cold Storage Co. v. State Tax Comm., supra, 248 Iowa 497, 81 N.W.2d 437; Dain Mfg. Co. v. State Tax Comm., 237 Iowa 531, 22 N.W.2d 786; 84 C.J.S. Taxation § 225.

IV. Only three of the disputed items were found by the trial court to be industrial equipment or materials directly used in processing tangible personal property for resale which were not readily obtainable in Iowa, and thus exempt from the use tax under chapter 423 of the Code.

Section 423.1 (10) defines "Readily obtainable in Iowa" to mean "kept in Iowa for sale or manfactured in Iowa for sale as distinguished from being obtainable by giving an order to an agent in Iowa for delivery from some point outside the state of Iowa."

■ There was evidence from which the trial court could find that three transformers of *the size and capacity required in* appellant's business were not readily obtainable in Iowa, that the huge tank and legs in which assorted stone is stored was not kept for sale in Iowa, and although it could be manufactured in Iowa, it did not appear where such an order would be accepted, and that two Hewitt-Robbins screens were not manufactured in Iowa, nor were any such screens or competitive brands kept in stock by Iowa dealers. The last item was not disputed and, while these proceedings are before us de novo, we are satisfied with the trial court's determination of those issues. As bearing on this matter, see Peoples Gas & Elec. Co. v. State Tax Comm., 238 Iowa 1369, 28 N.W.2d 799; Dain Mfg. Co. v. State Tax Comm., supra, 237 Iowa 531, 22 N.W.2d 786.

V. Having determined the operations prior to crushing were not processing, the claimed sales tax exemption for diesel fuel was properly denied, as was the use tax upon the shovel parts, the exhaust conditioner, and the stationary compressor, whether readily obtainable in Iowa or not. Having found no persuasive reason to reverse the conclusions of the trial court, its order granting judgment against plaintiff and in favor of defendants in the sum of $3,121.63 and costs is affirmed.

Affirmed.

All Justices concur, except UHLENHOPP, J., who takes no part.