**The UNITED STATES, Appellant,**

v.

**DOUGLAS AIRCRAFT CO., Appellee.**

Customs Appeal No. 74–26.

United States Court of Customs and Patent Appeals.

Feb. 20, 1975.

Carla A. Hills, Asst. Atty. Gen., Andrew P. Vance, Chief, Customs Section, Bernard J. Babb, New York City, for the United States.

Glad, Tuttle & White, Los Angeles, Cal., attys. of record, for appellee. Edward N. Glad, Los Angeles, Cal., of counsel.

Before MARKEY, Chief Judge, and RICH, BALDWIN, LANE and MILLER, Associate Judges.

MILLER, Judge.

This appeal is from the judgment of the United States Customs Court, 72 Cust.Ct. 10, C.D. 4498, 370 F.Supp. 1404 (1974), denying appellant's motion for judgment on the pleadings and granting appellee-importer's motion for summary judgment, involving appraisement of the processing subject to duty of a wing assembly and tail assembly (for a DC 9 airplane) which were exported from the United States to Canada for further processing and then returned to the United States for further processing. We reverse.

## PROCEEDINGS BELOW

The district director at the port of Detroit found the value of the processing in Canada subject to duty to be $285,552 under item 806.30 of the Tariff Schedules of the United States in accordance with headnote 2, Subpart B, Part 1, Schedule 8. Appropriate extracts from the law are quoted below.

Schedule 8.—Special Classification Provisions
 Part 1. Articles Exported and Returned
  *  *  *  *  *  *
 Subpart B. Articles Advanced or Improved Abroad
Subpart B headnotes:
    *  *  *  *  *  *
 2. Articles repaired, altered, processed, or otherwise changed in condition abroad.—The following provisions apply only to items 806.10, 806.20, and 806.30:
  (a) The value of repairs, alterations, processing, or other change in condition outside the United States shall be—

  (i) the cost to the importer of such change; or
  (ii) if no charge is made, the value of such change,

as set out in the invoice and entry papers; except that, if the appraiser concludes that the amount so set out does not represent a reasonable cost or value, then the value of the change shall be determined in accordance with section 402 or 402a of this Act.
     *  *  *  *  *  *

 Articles returned to the United States after having been exported to be advanced in value or improved in condition by any process of manufacture or other means:
    *  *  *  *  *  *
806.30  Any article of metal (except precious metal) manufactured in the United States or subjected to a process of manufacture in the United States, if exported for further processing, and if the exported article as processed outside the United States, or the article which results from the processing outside the United States, is returned to the United States for further processing......A duty upon the value of such processing outside the United States (see headnote 2 of this subpart).

Included in the $285,552 value determined by the Customs Service for the processing in Canada was the amount of $49,972, representing the pro rata share [1] of the cost of Canadian-made tooling, which appellee-importer contended it furnished the Canadian processor. Appellee-importer argues that none of the cost of such tooling should be included in the value of the processing subject to duty.

The Customs Court considered the circumstances of this case to be directly analogous to those in so-called "separable" appraisements and stated that the sole question was the propriety of including the disputed separable amount of $49,972 in the value determined by the Customs Service. In holding that such inclusion was not proper, the Customs Court concluded that, in the absence of extraordinary circumstances, the value

1. At oral hearing on the appeal it was brought out that "pro rata share" means the total cost of the tooling divided by the number of assemblies undergoing the processing in Canada.

of processing is the "cost to the importer," as provided by headnote 2(a)(i), and that this simply means the amount *charged* by the processor. It reasoned that the immediately following reference in headnote 2(a)(ii) to the possible circumstance "if no charge is made" reinforced its conclusion. And it relied on the Customs Court's decision in National Tube Co. v. United States, 28 Cust.Ct. 603, Reap.Dec. 8107 (1952), for its further conclusion that a distinction between tooling expenses incurred in the United States and those incurred outside the United States is unjustified. Although recognizing that the present statutory language (value of "processing") differs from the language involved in the *National Tube* case (value of "repairs or alterations"),[2] it said that the transition to the present language was "a natural one without . . . any new distinctions or meanings . . . ."

## OPINION

The key phrase in the Tariff Schedules on which this case turns is "value of . . . processing . . . outside the United States." This was immediately derived from subparagraph 1615(g)(4) of the Tariff Act of 1930, ch. 497, Pub.L. No. 361, 46 Stat. 674, which was added by the Customs Simplification Act of 1954, ch. 1213, Pub.L. No. 768, 68 Stat. 1137. As originally enacted in the Tariff Act of 1930, paragraph 1615 provided for duty free treatment of—

Articles the growth, produce or manufacture of the United States, when returned after having been exported, without having been advanced in value or improved in condition by any process of manufacture or other means if imported by or for the account of the person who exported them from the United States . . .

and further:

articles exported from the United States for repairs may be returned upon payment of a duty upon the val-

ue of the repairs at the rate at which the article itself would be subject if imported . . ..

The above portions of paragraph 1615 were substantially incorporated into subparagraphs 1615(a) and 1615(g), respectively, by the Customs Administrative Act of 1938, ch. 679, Pub.L. No. 721, 52 Stat. 1092. Subparagraph 1615(g) then read as follows:

(g) Any article exported from the United States for repairs or alterations may be returned upon the payment of a duty upon the value of the repairs or alterations at the rate or rates which would apply to the article itself in its repaired or altered condition . . ..

Thus, it is seen that the words "or alterations" were added to "repairs" by the 1938 Act.

Prior to the amendment by the Customs Simplification Act of 1954 which added "processing" to "repairs" and "alterations" in subparagraph 1615(g)(4), it appears that, in the case of articles sent by U.S. manufacturers along the Canadian border to Canada for processing and return to the United States for additional processing, duty was imposed on not only the value of the Canadian processing but also on the value of the article in its original exported form. Such treatment was based on subparagraph 1615(g) of the Tariff Act of 1930, as amended by the 1938 Act, with interpretation by the Customs Service of "repairs" and "alterations" being limited chiefly to those of a mechanical nature on equipment such as locomotives and buses. It was objected that imposing duty on the value of the article in its original exported form constituted a duty on American material and American labor. Hearings on H.R. 5106 Before the House Comm. on Ways and Means, 83d Cong., 1st Sess., 199–200 (1953).

■ Although addition of the word "processing" appears to have been designed to alleviate hardship to U.S. manufacturers arising from the narrow in-

---

**2.** Par. 1615(g) of the Tariff Act of 1930, ch. 497, Pub.L. No. 361, 46 Stat. 674, as amended by the Customs Administrative Act of 1938, ch. 679, Pub.L. No. 721, 52 Stat. 1092.

terpretation of "repairs" and "alterations," there is nothing in the legislative history to indicate that, when Congress provided, commencing with the 1954 Act, for "cost" or "reasonable cost" in determining the "value" of processing, there was any intention that "cost" be interpreted other than according to sound business accounting practice. Thus, cost of processing would include both direct and indirect costs. Indirect costs include factory overhead, which is normally added during the entire processing operation. S. Davidson, Handbook of Modern Accounting 38–16 (1970). Factory overhead is all manufacturing costs[3] other than direct materials and direct labor and includes depreciation of the factory buildings and equipment. G. Johnson & J. Gentry, Finney and Miller's Principles of Accounting 413 (Introductory 7th ed. 1970). Longer-life tools are set up as an asset and depreciated at an appropriate average rate; tools with a short life may be handled in a variety of ways, including charging their cost to production cost. R. Wixon, W. Kell, & N. Bedford, Accountants Handbook 16–34 (5th ed. 1970). When amortization rather than depreciation is used, a "customary" approach is to divide the amount to be amortized by units of expected work volume in order to obtain comparative costs per unit of work produced. W. Fiske & J. Beckett, Industrial Accountant's Handbook 377 (1954). Needless to say, only the costs allocable to a particular job order or contract are chargeable thereto. American Propeller & Mfg. Co. v. United States, 17 F.Supp. 215, 83 Ct. Cls. 100 (1936); Missile Systems Corp.,

ASBCA No. 8153, 64 BCA par. 4398 (1964).

Appellant states that the disputed charges in the *National Tube* case "essentially were for charges on articles designed and produced in the United States and sent to Canada, whereas the tooling in dispute herein was Canadian-made." However, it appears that the disputed charges in *National Tube* were for special equipment (designed in the United States) which was manufactured in Canada. See National Tube Co. v. United States, 26 Cust.Ct. 461, 462, Reap.Dec. 7923 (1950). This identity between *National Tube* and the case at bar was emphasized by the Customs Court, when it stated: "As here, the supplied tooling [in *National Tube*] was made in Canada."

■ Appellant argues that section 10.8(1) of Customs Regulations (19 C.F.R. § 10.8(1) (1966))[4] does not exclude expenses for tooling incurred in its production in a foreign country; that if the regulation were meant to exclude foreign tooling, it would have stated that all expenses for tooling, no matter where incurred, are to be excluded from the value of processing done abroad. The substance of this regulation was first promulgated[5] as T.D. 54192 on September 22, 1956 (21 Fed.Reg. 7212), and the language specifically excluding any of the expenses *in this country* (including tools for doing the processing) has continued ever since. 19 C.F.R. § 10.9(1) (1974). It is to be presumed that Congress was familiar with and sanctioned the regulation when, in 1962 (Pub.L. No.

---

**3.** "Processing" means a process of manufacture. Intelex Systems v. United States, 59 CCPA 138, C.A.D. 1055, 460 F.2d 1083 (1972).

**4.** (1) Collectors shall require at the time of entry a deposit of estimated duties based upon the full cost or fair market value, as the case may be, of the repairs, alterations, or processing. The cost or fair market value, as the case may be, of the repairs, alterations, or processing outside the United States which is to be set forth in the invoice and entry papers as the basis for the assessment of duty under item 806.20

or 806.30, shall be limited to the cost or value of the repairs, alterations, or processing actually performed abroad and shall not include any of the expenses incurred in this country, whether by way of engineering costs, preparation of plans or specifications, furnishing of tools or equipment for doing the repairs, alterations or processing abroad or otherwise.

**5.** Basic authority to issue appropriate regulations was granted the Secretary of the Treasury by section 624 of the Tariff Act of 1930, 46 Stat. 759 (19 U.S.C. § 1624). See also 19 U.S.C. § 66.

87–456, 76 Stat. 72), it authorized promulgation (without change in the key phrase interpreted by the regulation) of the Tariff Schedules of the United States, as set forth in the Tariff Classification Study of November 15, 1960. Helvering v. Winmill, 305 U.S. 79, 83, 59 S.Ct. 45, 83 L.Ed. 52 (1938). See United States v. Bartram Bros., 131 F. 833, 837 (2d Cir. 1904). Compliance with this regulation is required. Keeler v. United States, 45 CCPA 67, C.A.D. 675 (1958). See New York Dept. of Social Services v. Dublino, 413 U.S. 405, 421, 93 S.Ct. 2507, 37 L.Ed.2d 638 (1973). Also, the plain meaning of the regulation is that only expenses *in this country* are excluded—a meaning supported by the maxim *expressio unius est exclusio alterius.*

Appellee argues that the interpretation by the Appellate Term of the Customs Court in the 1952 *National Tube* opinion properly reflects Congressional intent that foreign-made tooling [6] is no more a part of "the value of such processing outside the United States" than is the tooling made in the United States and supplied to the foreign processor, because the primary statutory language of value of "alterations" or value of "processing" remained unchanged during subsequent amendment to the Tariff Act of 1930 by the Customs Simplification Act of 1954 and enactment of the Tariff Schedules of the United States. It cites United States v. D. H. Grant & Co., 47 CCPA 20, 27, C.A.D. 723 (1959) for the presumption in legislative interpretation that reenactment of a statutory provision by Congress without significant change indicates the correctness of prior judicial interpretation of that provision.

█ First, the presumption argued for by appellee "is only an aid in statutory construction." Helvering v. Reynolds,

313 U.S. 428, 432, 61 S.Ct. 971, 973, 85 L.Ed. 1438 (1941). It arises only when the statutory language has remained unchanged or substantially unchanged. The *National Tube* case involved interpretation of "value of the repairs or alterations" in paragraph 1615(g) of the Tariff Act of 1930, as amended, prior to addition of the word "processing" by the Customs Simplification Act of 1954 and, as pointed out above, this change in the statutory language was prompted by the narrow interpretation which had been given "repairs" and "alterations." Perhaps the change was a "natural one," but we cannot agree with the Customs Court that it was without "any new distinctions or meanings." It was a substantial change.

Second, we have been unable to find, and appellee has not pointed out, any indication in the legislative history of the Customs Simplification Act of 1954 and of the Tariff Schedules of the United States, including the pertinent Tariff Classification Studies and Tariff Commission Reports, that the *National Tube* case was considered by Congress.[7] This is not surprising in view of the Supreme Court's statement: "One decision construing an act does not approach the dignity of a well settled interpretation." United States v. Raynor, 302 U.S. 540, 552, 58 S.Ct. 353, 358, 82 L.Ed. 413 (1938). We note that United States v. D. H. Grant & Co., supra, cited by appellee for the above-stated presumption, in turn cited United States v. Bassichis Co., 16 Ct.Cust.App. 410, T.D. 43133 (1928), and James P. Smith & Co. v. United States, 21 CCPA 514, T.D. 46971 (1934). In the latter, the court referred to "this long line of uniform judicial holdings" by the Board of General Appraisers, and in the former the court stated the presumption on the basis of a holding by the

**6.** At oral hearing, counsel for appellee made it clear that "not one penny" relating to the Canadian-made tooling is included in its contended-for value of $235,580 ($285,552 minus the disputed amount of $49,972).

**7.** This court has often held that reenactment by Congress of a customs law gives rise to a presumption that a judicial interpretation

thereof was correct when such interpretation was specifically brought to the attention of Congress. United States v. Olavarria & Co., 37 CCPA 40, C.A.D. 417 (1949); United States v. Colonial Bead Co., 36 CCPA 78, C.A.D. 401 (1949); United States v. Water Treatment Co. of America, 33 CCPA 174, C.A.D. 332 (1946).

Board of General Appraisers followed by reenactment of "the identical language" which had been interpreted.[8]

Indeed, we read the 1952 *National Tube* opinion as supporting the proposition that foreign-made tooling should be taken into account in determining the value of processing outside the United States. To the extent that it might be interpreted otherwise, it would not reflect the law.

The Customs Court, in determining that the amount *charged* by the processor is the "cost to the importer" and that this is the "value" of the processing for purposes of headnote 2(a), apparently ignored the exception provided in headnote 2(a), namely:

> except that, if the appraiser concludes that the amount so set out [in the invoice and entry papers] does not represent a reasonable cost or value, then the value of the change shall be determined in accordance with section 402 or 402a of this Act.

At least the Customs Court determined that the failure to include any costs attributable to the tooling was not such an "extraordinary circumstance" that the method provided for by the exception was triggered. The statute does not require an "extraordinary circumstance," but only the appraiser's conclusion (albeit not an arbitrary one) that reasonable cost or value has not been set out. We conclude that appellee's failure to take into account the Canadian-made tooling would have been a reasonable and proper basis for the appraiser to determine the value of the processing in accordance with section 402 or 402a.

Inasmuch as the separability rule is applicable to cases involving the determination of "value" under sections 402 and 402a of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956, ch. 887, Pub.L. No. 927, 70 Stat. 943, we agree with the Customs Court that the sole question to be decided is the propriety of including the disputed separable amount of $49,972 in the appraised value. On this point appellee-importer had the burden of proof. It elected to stand on its contention that no part of the Canadian-made tooling costs is to be taken into account in determining value. We hold that the statute requires to the contrary. Accordingly, the appraiser's determination must stand.

In view of the foregoing, the judgment of the Customs Court is reversed.

---

8. We note that the presumption for which appellee contends is usually stated in terms of interpretation by courts of last resort. 82 C.J.S. Statutes § 370b(1); 73 Am.Jur.2d, Statutes § 322. See New York v. Saper, 336 U.S. 328, 69 S.Ct. 554, 93 L.Ed. 710 (1949). No such hierarchical distinction is present in the case of regulations promulgated by the Treasury Department.