1997 SD 85

**Harlan OPPERMAN d/b/a Opperman Sand & Gravel and d/b/a Opperman Construction, Plaintiff and Appellee,**

v.

**HERITAGE MUTUAL INSURANCE COMPANY, Defendant and Appellant.**

**No. 19856.**

Supreme Court of South Dakota.

Considered on Briefs March 27, 1997.

Decided July 16, 1997.

---

Wally Eklund of Johnson, Eklund, Nicholson and Dougherty, Gregory, for plaintiff and appellee.

Michael J. Schaffer, Keith A. Gauer of Davenport, Evans, Hurwitz & Smith, L.L.P., Sioux Falls, for defendant and appellant.

KONENKAMP, Justice.

[¶ 1] Harlan Opperman lost a front-end loader when one of his buildings burned. The loader was ordinarily used at gravel pits several miles away, but was on the premises

for an overhaul. His insurance policy covered "vehicles or self-propelled machines ... you manufacture, process or warehouse," but excluded vehicles "operated principally away from the described premises." Was the loader being "processed" or "warehoused" at the time of the fire, removing it from exclusion and allowing coverage? The trial court ruled it was, but we reverse, holding the plain language of the insurance contract bars coverage.

### Facts

[¶ 2] Opperman conducts two businesses in Gregory: Opperman Sand and Gravel and Opperman Construction. A fire damaged his business premises on November 20, 1993, and he sought coverage under a commercial property insurance policy he held with Heritage Mutual Insurance Company. The insured premises listed in the policy consisted of a frame office, a noncombustible shop, and a frame shop. Renewed annually, this policy had been in effect since November 1, 1991. Among the items damaged was a Fiat–Allis Model # 945–B front-end loader, dismantled at the time for maintenance. It most recently had been used six and one-half miles from the business premises at one of Opperman's three gravel pits; none of these pits were insured under the policy. We quote the relevant provisions:

2. Property Not Covered

Covered Property does not include:

\* \* \*

O. Vehicles or self-propelled machines (including aircraft or watercraft) that:

(1) Are licensed for use on public roads; or

(2) Are operated principally away from the described premises.

This paragraph does not apply to:

(1) Vehicles or self-propelled machines or autos you manufacture, process or warehouse;

(2) Vehicles or self-propelled machines, other than autos, you hold for sale; or

(3) Rowboats or canoes out of water at the described premises.

Along with other items, two engines damaged in the fire were covered as they were kept in the building for spares and were not operated elsewhere. Heritage sought to exclude coverage for the front-end loader under 2.O.(2) because it was "operated principally away from the described premises." Opperman looked to exception (1), claiming the loader was a vehicle being "process[ed]" or "warehous[ed]" in the building.[1] The trial court agreed, ruling the policy covered the loss, and Heritage appealed.

### Analysis and Decision

■ [¶ 3] When interpreting insurance contracts, we have uniformly held them reviewable as a matter of law under the de novo standard. *De Smet Ins. Co. v. Gibson,* 1996 SD 102, ¶ 5, 552 N.W.2d 98, 99; *Economic Aero Club, Inc. v. Avemco Ins. Co.,* 540 N.W.2d 644, 645 (S.D.1995); *State Farm Mut. Auto. Ins. Co. v. Vostad,* 520 N.W.2d 273, 275 (S.D.1994). This includes determining whether an insurance contract is ambiguous. *Rogers v. Allied Mut. Ins. Co.,* 520 N.W.2d 614, 616 (S.D.1994). We review a trial court's findings of fact under a clearly erroneous standard. *Jasper v. Smith,* 540 N.W.2d 399, 401 (S.D.1995).

■ [¶ 4] Opperman accords broad meanings to "process" and "warehouse," at odds with Heritage's reliance on more narrow definitions. "When an insurer seeks to invoke a policy exclusion as a means of avoiding coverage, the insurer has the burden of proving that the exclusion applies." *American Family Mut. Ins. Co. v. Purdy,* 483 N.W.2d 197, 199 (S.D.1992)(citing *Western Cas. & Sur. Co. v. Anderson,* 273 N.W.2d 203, 205 (S.D.1979)). If an insurance contract is "fairly susceptible of different interpretations, the interpretation most favorable to the insured should be adopted." *Olson v. United States Fid. & Guar. Co.,* 1996 SD 66, ¶ 6, 549 N.W.2d 199, 200 (quoting *Rogers,* 520 N.W.2d at 616); *American Family Mut. Ins.*

---

1. Opperman also argues representations made by Heritage's agent estopped Heritage from denying coverage. The trial court ruled against Opperman on this issue and he did not file a notice of review, so the matter was waived. SDCL 15–26A–22; *Rude Transp. Co. v. South Dakota Pub. Utils. Comm'n,* 431 N.W.2d 160, 162 (S.D.1988).

*v. Elliot,* 523 N.W.2d 100, 102 (S.D.1994); *Pete Lien & Sons, Inc. v. First Am. Title Ins. Co.,* 478 N.W.2d 824, 827 (S.D.1991); *Tri–State Ins. Co. of Minn. v. Bollinger,* 476 N.W.2d 697, 701 (S.D.1991). These principles serve to guide us, but we cannot "seek out a strained or unusual meaning for the benefit of the insured." *Rogers,* 520 N.W.2d at 616 (citations omitted). Insurance contracts warrant reasonable interpretation, in the context of the risks insured, without stretching terminology. *Vostad,* 520 N.W.2d at 275 (citing *Prokop v. North Star Mut. Ins. Co.,* 457 N.W.2d 862, 864 (S.D.1990)). We ascribe to contract language plain and ordinary meaning. *Economic Aero Club, Inc.,* 540 N.W.2d at 645; *Elliot,* 523 N.W.2d at 102; *O'Neill v. Blue Cross of Western Iowa & S.D.,* 366 N.W.2d 816, 818 (S.D.1985).

[¶ 5] Finding the insurance policy unambiguous, the trial court held "process" included a *maintenance overhaul.* Given its ordinary and plain meaning within a commercial or business context, "process" refers to a systematic series of actions whereby an item is prepared, converted or transformed for marketability. *See, e.g., Cochrane v. Deener,* 94 U.S. 780, 788, 24 L.Ed. 139, 141 (1876)(defining "process" as a "mode of treatment of certain materials to produce a given result. It is an act, or a series of acts, performed upon the subject-matter to be transformed and reduced to a different state or thing"); *United States v. Douglas Aircraft Co.,* 62 C.C.P.A. 53, 510 F.2d 1387, 1391 n. 3 (1975) (" 'Processing' means a process of manufacture."); *State v. Four States Drilling Co.,* 278 Ala. 273, 177 So.2d 828, 832 (1965)(to "process" is "to subject to some special treatment, to prepare for market, to convert into marketable form"); *Linwood Stone Prods. Co. v. State Dep't of Revenue,* 175 N.W.2d 393, 395 (Iowa 1970)("process" is an operation whereby raw materials change form); *Landis v. Zoning Bd. of Adjustment,* 414 Pa. 146, 198 A.2d 574, 577 (1964)("process" is to treat, handle, or prepare through special treatment); *Krienke v. Southwestern Superior Prod. Corp.,* 376 S.W.2d 936, 938 (Tex.Civ.App.1964)(defining "process" as to subject to treatment by special process, especially raw materials; to convert into marketable form or prepare for market); *compare*

*Nelson by Carson v. Park Indus., Inc.,* 717 F.2d 1120, 1124 n. 5 (7th Cir.1983) (construing "to process" in a broader sense, i.e., "subjecting something to a particular system of handling to effect a particular result," and still holding only that it applies to one who "purchased and sold goods in the ordinary course of trade in a distribution system").

[¶ 6] The circuit court concluded the term "warehouse" applied to stored personal items, machinery, and equipment, thus encompassing the loader. "Warehouse," given its common, industry usage, means to store items for later commercial distribution. *Fisher v. Board of Zoning Appeals of Town of Monroe,* 143 Conn. 358, 122 A.2d 729, 731 (1956)("warehouse" means a building for the reception and keeping of goods of others to be stored for hire); *City of Detroit v. General Foods Corp.,* 39 Mich.App. 180, 197 N.W.2d 315, 323 (1972)("warehouse" is a place for storing goods and merchandise); *Webster's Third New International Dictionary, Unabridged* 2576 (1976)( "to put or hold in safekeeping ... " or "to deposit, store, or secure in a warehouse ... to put or hold in safekeeping ... to hold a shipment beyond the free time permitted a consignee to obtain or take delivery of his goods"). The court specifically found as a matter of fact the front-end loader was "operated principally away from the building," but as it was inoperable, it was being processed or warehoused.

[¶ 7] To understand their meanings, these terms ought to be measured with their companions: "vehicles or self-propelled machines or autos you manufacture, process or warehouse." Under the canon of *noscitur a sociis,* words take import from each other. *Jarecki v. G.D. Searle & Co.,* 367 U.S. 303, 307, 81 S.Ct. 1579, 1582, 6 L.Ed.2d 859, 862–63 (1961). This maxim of interpretation is "wisely applied where a word [or phrase] is capable of many meanings in order to avoid the giving of unintended breadth" to contract provisions. *Id.* at 307, 81 S.Ct. at 1582, 6 L.Ed.2d at 863; *State Auto. Club, Inc. v. Volk,* 305 N.W.2d 693, 696 (S.D.1981); *Brookings Mall, Inc. v. Cpt. Ahab's, Ltd.,* 300 N.W.2d 259, 262 (S.D.1980)(applying doc-

trines of *ejusdem generis* and *noscitur a sociis* in contract interpretation); *State v. Janisch*, 290 N.W.2d 473, 476 (S.D.1980). *See also Utility Electric Supply, Inc. v. ABB Power T & D Co., Inc.*, 36 F.3d 737, 740 (8th Cir.1994)(using this maxim to interpret South Dakota law). By the context in which these terms are used, *noscitur a sociis* supports a more restrictive meaning to "process" and "warehouse" than Opperman advances. "Manufacture, process or warehouse" describe common steps in bringing a product to market from production through the chain of distribution. Exception (2) strengthens this interpretation: "self-propelled machines ... you hold for sale" covering vehicles held at the point of sale. The loader was not in the chain of distribution or held at the point of sale; it was being rebuilt or repaired to be put back in service.

[¶ 8] An expansive interpretation of "process" or "warehouse" would conceivably cover any vehicle Opperman might have chosen to put in the building for repairs, regardless of how valuable it might be. That hardly fits within the risk the parties contemplated. *Design Data Corp. v. Maryland Cas. Co.*, 243 Neb. 945, 503 N.W.2d 552, 559 (1993); *Resseguie v. American Mut. Liab. Ins. Co.*, 51 Wis.2d 92, 186 N.W.2d 236, 241 (1971). Three days before the fire, Opperman signed a Statement of Values representing the worth of the contents in the building at $30,000. The front-end loader alone was valued at $35,000. By his own admission, the loader was in the building at the time he signed the Statement of Values and had been there since the previous fall.

[¶ 9] Certainly, the value of the property covered is material to the risk an insurer undertakes. 8 *Couch on Insurance* 2d § 37A:263 (Rev ed 1985)("Statements by the insured as to the value or cost of the property insured are generally regarded as material to the risk."); 43 AmJur2d *Insurance* § 1010 (1982 & 1996 Supp)(insureds have a duty to disclose all facts material to the risk). A "statement as to the location of the insured property is material since such fact enters into the matter of fixing the premium rate." 8 *Couch on Insurance* 2d § 37A.251; *Curran v. National–Ben Franklin*, 261 N.W.2d 822,

827 (Iowa 1978)(as the location of property is material to the risk, if the description is in error, the "coverage ordinarily will not be extended to other locations"). Although blanket coverage on the policy was $165,200 (for building and contents, including expensive tools and engines) and Opperman specifically requested coverage for the maintenance and repair operations in his building, the Statement of Values he signed while the loader was in the building intimates his anticipated level of covered risk and the contents he considered insured. *Cf. U.P. Terminal Fed. Cr. Union v. Employers Mut. Liab. Ins. Co.*, 172 Neb. 190, 109 N.W.2d 115, 119 (1961)(policy premium as an indication of the intent of the parties with regard to the extent of the risk assumed).

[¶ 10] Finally, Opperman maintained an inland marine insurance policy with another company, but obtained through the same agent, covering "contractor's equipment." He chose to protect with this policy only a sand conveyor ($40,000) and miscellaneous "tools and equipment usual to the trade or profession of the insured" ($5,000 total or $250 per item). He represented he would self-insure any remaining equipment. Opperman never chose to insure the loader on this policy. Inland marine policies typically cover machinery like front-end loaders. 10A *Couch on Insurance* 2d § 42.162 (inland marine policies commonly used for "mobile equipment," including construction equipment and the like); Robert E. Keeton & Alan I. Widiss, *Insurance Law* § 1.5(b)(2), at 20 (1988)(inland marine policies generally insure any types of goods or property that might be affected by movement).

[¶ 11] Policy terms clearly exclude the loss claimed here. We cannot, by judicial construction, strain to reach a definition of "process" and "warehouse" to compensate for an oversight in not insuring a valuable piece of equipment. The judgment of the trial court is reversed, as the policy, given common and ordinary meaning, provides no coverage for the loss of Opperman's front-end loader.

[¶ 12] Reversed.

[¶ 13] MILLER, C.J., and SABERS and AMUNDSON, JJ., concur.

[¶ 14] GILBERTSON, J., dissents.

GILBERTSON, Justice (dissenting).

[¶ 15] I respectfully dissent from the majority and would hold that the front-end loader was being warehoused as defined by Heritage's policy.

[¶ 16] The majority fails to explain away the exceptions listed under Paragraph o. of the policy. The two relevant exceptions are:

(1) Vehicles or self-propelled machines or autos you manufacture, process or warehouse; *or*

(2) Vehicles or self-propelled machines, other than autos, you hold for sale;

(emphasis added).

[¶ 17] From its own policy, it is clear that Heritage does not term warehousing as storing vehicles or self-propelled machines for sale/resale. If it did, there would be no need for two exceptions, which differentiate between "warehousing" and "holding for sale." The policy language further supports this interpretation by 1) separating the exceptions with the word "or" between the two exceptions, indicating they are alternative; and 2) by including autos under the first exception, and removing it from the second, underscoring that the terms "warehouse" and "holding for sale" cannot mean the same thing.

[¶ 18] The majority cites no authority for the proposition that the contract is to be construed pursuant to a common "industry" meaning. *Supra*, p. 490. The definition cited by the majority in Webster's Third New International Dictionary, Unabridged 2756,

using "warehouse" as a verb, is "to put or hold in safekeeping . . . ." *supra*, p. 490. This common dictionary definition, and the interpretation urged by Opperman, is the "plain and ordinary meaning" of warehousing.[2] *American Family Mut. Ins. Co. v. Elliot*, 523 N.W.2d 100, 102 (S.D.1994), *supra* p. 489. It is not a "strained or unusual meaning." *Rogers v. Allied Mut. Ins. Co.*, 520 N.W.2d 614, 616 (S.D.1994), *supra* p. 489. Applying our rule interpreting the contract most favorably to the insured, *Olson v. United States Fid. & Guar. Co.*, 1996 SD 66, 549 N.W.2d 199, the ordinary definition of warehousing entitles Opperman to coverage.

[¶ 19] Further, the majority, in determining that warehousing means storing goods for commercial sale, uses what is in essence a Uniform Commercial Code (UCC) definition for warehousing. *See* SDCL 57A–2–102 (chapter refers to transactions in goods). Opperman is not engaged in the sale of goods; it is a provider of services, which do not fall under the UCC. It also is not a manufacturer/processor. Heritage had extensive knowledge of the type of business Opperman was conducting.[3] If the common *industry* definition is to be used, it would render the provision meaningless as to Opperman, who is not in the industry whose definition is urged upon it. As we have said before, "[a] construction which may render a portion of the policy illusory should not be indulged in." *Rogers*, 520 N.W.2d at 617.

[¶ 20] Heritage also claims that the doctrine of *ejusdem generis* applies in this instance, and "warehouse" must be interpreted in light of the preceding terms, "manufacture" and "process." This rule of construc-

---

**2.** This Court has itself used the verb "warehouse" in contexts other than storage of goods in a warehouse. See *State v. Gehrke*, 491 N.W.2d 421, 427 (S.D.1992) (Henderson, J. dissenting) ("warehousing" of state prisoners by private facilities); *Robinson v. Solem*, 432 N.W.2d 246, 255 (S.D.1988) (Henderson, J. dissenting) ("warehousing" without treatment individuals who plead guilty but mentally ill); *Snyder v. First Fed. Sav. & Loan Ass'n*, 90 S.D. 440, 442, 241 N.W.2d 725, 726 (1976) (lending institution purchased real estate and "warehoused" it for the developer). These uses conform to the common, ordinary definition as cited above, "to put or hold in safekeeping".

**3.** The trial court's findings of fact point out that a representative from Heritage, in anticipation of renewing the policy, inspected the warehouse six months before the fire and learned that Opperman had employed a full-time mechanic and that the insured building was being used to store and overhaul machinery. The trial court specifically found that "Heritage possessed extensive knowledge concerning the operation of Opperman's business." Heritage has made no allegation of fraud.

tion does apply to insurance contracts, but it applies when "general words follow an enumeration of persons or things, by words of a particular and specific meaning." *Black's Law Dictionary,* 464 (5thed 1979). In this case, warehousing is not a general term following more specific terms. *See, e.g., Sioux Falls Sch. Dist. v. Koupal,* 526 N.W.2d 248 (S.D.1994) (applied specific terms to limit definition of general term "other supportive services"); *State v. Galati,* 365 N.W.2d 575 (S.D.1985) ("administered by or with the privity of the accused" relates back to all listed conditions rendering rape victim incapable of consent); *In re O'Neill,* 347 N.W.2d 887 (S.D.1984) (applied rule to general term "other just causes"); *Aberdeen Educ. Ass'n v. Aberdeen Bd. of Educ.,* 88 S.D. 127, 215 N.W.2d 837 (1974) (applied rule to general

term "other conditions of employment"). The rule simply does not apply here.

[¶ 21] The fact that Opperman signed a Statement of Values indicating the value of the property in the building is not dispositive. In fact, it has nothing to do with the issue before the Court, which is whether the language of the policy excludes the torn-down front-end loader temporarily stored in the warehouse.[4]

[¶ 22] I would affirm the trial court.

---

4. The trial court made no finding that even mentions the Statement of Values, probably because such extrinsic evidence cannot be used to construe a contract when it is unambiguous, as the majority agrees this contract was. See *Ford v. Moore,* 1996 SD 112, 552 N.W.2d 850.