**CALVERT et al.**

**v.**

**PHILLIPS CHEMICAL CO.**

**No. 10222.**

Court of Civil Appeals of Texas.

Austin.

May 5, 1954.

Rehearing Denied June 2, 1954.

John Ben Shepperd, Atty. Gen., W. V. Geppert, William W. Guild, Asst. Attys. Gen., for appellants.

Rayburn L. Foster, Harry D. Turner, Bartlesville, Okl., R. K. Batten, E. H. Brown, Houston, T. L. Dyer, Black & Stayton, Austin, for appellee.

HUGHES, Justice.

This is a suit brought by appellee, Phillips Chemical Company, a Delaware corporation, against the Comptroller of Public Accounts, the Attorney General and the Treasurer of the State of Texas, hereafter collectively referred to as the "State," for a refund of taxes paid under protest.

Appellee has purported to act under and in accordance with the provisions of Article 7057b, known as the protest statute.

The taxes involved are those paid by appellee under Art. 7047, section 40b, Vernon's Annotated Civil Statutes, Acts 1941, 47 Leg. p. 269, Ch. 184, Art. III, as amended by Acts 1951, 52nd Leg. p. 695, Ch. 402, § II, the pertinent part of which reads:

"Occupation tax on sulphur producers.—Section 1. Sulphur Producers: Each person, firm, association, or corporation who owns, controls, manages, leases, or operates any sulphur mine, or mines, wells, or shafts, or who produces sulphur by any method, system, or manner within this State shall make quarterly, on the first day of January, April, July, and October of each year, a report to the Comptroller in this State, or if such person be other than individual, sworn to by its president, secretary, or other duly authorized officer, on such forms as the Comptroller shall prescribe, showing the total amount of sulphur produced within this State by said person during the quarter next preceding, and at the time of making said report shall pay to the Treasurer of this State an occupation tax for the quarter ending on said date an amount equal to One Dollar and Forty Cents ($1.40) per long ton, or fraction thereof, of all sulphur produced by said person within the State of Texas during said quarter." ·

Trial below was nonjury and resulted in a judgment for appellee for a refund of all taxes paid under the above statute under protest and for the recovery of which suit had been filed within 90 days from the date of payment and protest but denying recovery of similar payments made more than 90 days before any suit for their recovery was instituted and more than 90 days before any amended pleading in the present case seeking recovery of such payments was filed.

Both the State and appellee have appealed.

Since we have concluded that appellee was in no event entitled to recover any of the taxes paid by it under protest there is no occasion for us to consider the appeal taken by appellee from that portion of the judgment which was adverse to it.

Appellee's primary contention is that it does not "produce" sulphur as that word is used in the tax statute because it does not obtain sulphur through or as the result of any mining operation.

We adopt appellee's summary of the material evidence, as follows:

"Some of the oil and gas fields of this State produce a natural gas with sulphur content that is commonly known as 'sour gas.' This gas cannot be used for light or fuel until its sulphur content is removed. Consequently many producers of sour gas treat it in absorption plants thereby dividing each stream of sour gas into a stream of sweet gas that may be used for light and fuel and a stream of waste gas containing hydrogen sulphide and carbon dioxide.

"Phillips purchases waste gas at absorption plants, and at its plants in Ector and Crane Counties, Texas, extracts elemental suphur from the waste gas by a manufacturing,[1] refining or chemical process that employs a catalytic agent. In brief, this process consists of three steps. First, a portion of the hydrogen sulphide is burned to sulphur dioxide. Next, there is caused a catalytic reaction between the sulphur dioxide and the remaining hydrogen sulphide that yields elemental sulphur in vapor form, such reaction taking place in a converter. Finally, the sulphur vapor is separated from the gas stream and the condensed liquid sulphur is piped to a sump.

"The hydrogen sulphide processed at Phillips' plants is extracted from the earth as a component of natural gas produced from wells classified as oil wells or as gas wells by the Railroad Commission of Texas. These oil and gas wells are owned and operated by persons or entities other than Phillips; Phillips has no interest whatsoever in any of such wells or in any of the oil and gas as it comes from the mouth of such wells.

"The sulphur that is manufactured at Phillips' plants originally was a part of the gas streams of various oil and gas wells and constituted part of the volume of these streams. In other words, if each gas stream had contained no sulphur the volume of the stream would have been smaller. Moreover, the fact that sulphur can be extracted from sour gas through the process used by Phillips at its plants increases the value of the sour gas at the mouth of the well.

"Most of the sulphur produced in Texas is produced by means of the Frasch method. Under this method hot water is circulated through wells drilled to the depth of the sulphur deposit and when such water reaches the surface it brings with it elemental sulphur. The Frasch method is often referred to as a mining operation and, as already stated, involves the use of wells drilled to the sulphur deposit. Through this method raw sulphur is actually brought from the bowels of the earth to the surface.

"Sulphur is also commercially produced in Texas by merely scraping it from the surface of the ground or by digging it out of open pits. Such operations are carried on at Damon Mound on the Gulf Coast.

"The process used by Phillips at its plants was first used commercially in 1944; and insofar as Texas is concerned, was first commercially used in 1951.

"Phillips' expert witness Legaski, who aided in the design and construction of Phillips' two plants, testified that the process used by Phillips to extract sulphur from sour gas is essentially a manufacturing process."

Relying upon the rules of ejusdem generis (same kind) and noscitur a sociis (associated words)[2] sometimes employed in the construction of ambiguous statutes appellee contends that the statute before us should be restricted in its application to sulphur which is produced by mining or by some process akin to mining and further contending, of course, that the process employed by it does not fall in such category.

However, since sulphur is an element it would not, in common parlance at least, be considered a manufactured product.

1. We do not necessarily adopt the word "manufacture" as applied to sulphur extracted from gas although the words "manufacture" and "produce" have much in common as shown by one of the definitions of the word "produce" quoted by appellee in its brief, towit:
   "to give being or form to; to manufacture; make; as, he produces excellent pottery."

2. For a discussion of these rules see Crawford on Statutory Construction (1940) Secs. 190–1, Tex.Jur., Vol. 39, p. 202.

■ The State resists resort to these rules because they do not apply when the enumeration of particular things in a statute exhausts the entire genus, 39 Tex.Jur. p. 204, the State asserting that no other method of producing sulphur except by "mines, wells or shafts" was known when the Legislature first employed these words in the Act of 1930,[3] which has since remained substantially unchanged except as to rates.

Appellee refutes this argument by referring to testimony in the record that in some instances sulphur has been produced by merely scraping it from the surface of the earth.

■ Whatever may be the merits of this legal sparring we need not determine because the statute, as we read it, is plain, clear and unambiguous and hence the aid of rules of construction is not helpful nor required, and in fact their use under such circumstances would be improper.

■ By this statute, it is our opinion, that the Legislature intended to tax the production of all sulphur irrespective of the manner or means by which such production was accomplished. The language of the statute, framed entirely in the disjunctive, seems to admit of no other construction.

The only question of any substance at all is whether appellee by its method of extracting or separating sulphur from gas "produces" sulphur.

■■ Statutes should be given a reasonable and not a strained or technical construction. It would be unfair, to say the least, to permit taxed and untaxed sulphur to compete in the same market. There could, of course, be circumstances under which the Legislature might justifiably tax one method of recovering sulphur and not another but the statute here contains no exemptions and none can or should be presumed.

We find in Webster's New International Dictionary, Second Edition, unabridged, that the word "product", a synonym of "produce", is defined as "anything produced" and that the word product, in chemistry, means "a substance produced from one or more other substances as a result of chemical change."

■ Considering this definition which exactly fits the process by which appellee extracts sulphur from gas and the other matters discussed above we have no difficulty in concluding that when it does so it produces sulphur within the meaning of Art. 7047, section 40b, supra.

The judgment of the trial court is affirmed to the extent that it denied appellee recovery and is reversed and judgment is here rendered that appellee take nothing by its suit insofar as it decreed recovery for appellee.

---

3. Chap. 74, p. 233, Acts 41st Leg., 1930, 5th C.S.