Albert BLACKBURN, et ux, Appellants

v.

BRAZOS VALLEY UTILITIES, INC.,
and Hardin Water Supply
Corp., Appellees.

No. 09–88–157–CV.

Court of Appeals of Texas,
Beaumont.

Aug. 31, 1989.

Rehearing Denied Oct. 17, 1989.

Joe B. Brack, Baytown, for appellants.

Neal J. Iverson, Dayton, John C. Hampton, Bryan, for appellees.

## OPINION

BURGESS, Justice.

In 1982, appellants[1] filed suit alleging trespass and damages to their land arising from the construction of a water line in front of their home. In 1987, they amended their pleadings to include false imprisonment, civil rights violations, and the taking of property without compensation. A jury trial ensued, but the trial court withdrew the case from the jury and directed a verdict for appellees. Appellants urge six points of error.

Hardin Water Supply Corporation (hereinafter referred to as Hardin), contracted with Brazos Valley Utilities, Inc. (Brazos), who in turn subcontracted with Harold Brown and Sons Ditching Co., Inc. (Brown), to lay a water line in a ditch adjacent to the east side of a county-maintained road. The

---

1. A suggestion of death of appellant India Euge-    nia Blackburn has been entered in this case.

County Commissioners of Liberty County, Texas, gave Hardin permission to place the line in the right-of-way of the road. Appellants had title to the middle of the road, including the ditch. The trial court ruled, as a matter of law, that Hardin was entitled to lay its lines in county-maintained roads and there was no trespass or taking without due process or compensation.

■ The first point of error takes issue with the trial court's ruling that Hardin had statutory authority to lay the lines without exercising the power of eminent domain. Hardin is a non-profit water supply corporation organized and existing under *TEX.REV.CIV.STAT.ANN. art. 1434a* (Vernon 1980). *Section 4* of this article gives Hardin the right of eminent domain to acquire rights-of-way. *See Flores v. Military Highway Water Supply Corp.,* 714 S.W.2d 382 (Tex.App.—Corpus Christi 1986, no writ). *TEX.REV.CIV.STAT. ANN. art. 1433* (Vernon 1980) authorizes any water corporation to lay its pipes under and along public roads outside city limits. Although article 1433 was enacted before article 1434a, they are not in conflict and can be construed together. Under article 1433, Hardin has the authority to lay water lines in public road rights-of-way and, under article 1434a, Hardin has the power of eminent domain to obtain non-public roadway rights-of-way. The road in question was a public road by prescription, but a highway easement acquired by prescription is no less comprehensive than one acquired by grant, dedication or condemnation. *Hill Farm, Inc. v. Hill County,* 436 S.W.2d 320 (Tex.1969). Consequently, Hardin was authorized under article 1433 to lay its water pipes in the right-of-way along the public road. Point of error number one is overruled.

The next point of error complains the trial court erred in refusing the admission of a letter from appellant's attorney to Hardin. Appellants have not shown any harm, that is, how the exclusion, even if erroneous, was reasonably calculated to cause and probably did cause rendition of an improper judgment. *TEX.R.APP.P. 81(b)(1).* This point of error is overruled.

■ The last four points of error concern the trial court's refusing the introduction of any evidence of special damages arising out of the alleged false imprisonment. The trial court refused to allow the evidence because appellants had not set out any special damages attributable to the false imprisonment in their answers to interrogatories. The interrogatory and answer in question:

"Interrogatory No. 7(c):

"Give the amount of damages you claim you have suffered as a result of Defendants' actions as set forth in your Second Amended Petition, and list specifically the damages claimed in connection with each such alleged grounds of recovery (or theory of liability) asserted against Defendants (for example: Trespass— $_____, etc.).

"*ANSWER:* Actual damages for the above $1,300.00 plus interest until paid. Punative [sic] Damages of $500,000.00 which include attorney's fees."

Appellants' attorney stated the $1,300.00 figure was damages claimed for the trespass and not for the false imprisonment. This admission was conclusive upon appellants. *Carroll Instrument Co., Inc. v. B.W.B. Controls, Inc.,* 677 S.W.2d 654 (Tex.App.—Houston [1st Dist.] 1984, no writ). Thus, there was no response to the interrogatory regarding damages for the false imprisonment. *TEX.R.CIV.PROC. 215(5)* provides that when a party fails to respond to an interrogatory, then that party shall not be entitled to present evidence which the party was under a duty to provide thereunder unless the court finds good cause. This exclusion of evidence sanction is automatic and the burden was on appellant to show good cause. *Morrow v. H.E.B., Inc.,* 714 S.W.2d 297 (Tex.1986). We find no abuse of discretion in the trial court's excluding the evidence of special damages for the false imprisonment. That evidence having been properly excluded, the trial court properly excluded any evidence on exemplary damages since without special damages, there could be no exemplary damage award. *Nabours v. Long-*

*view Savings & Loan Ass'n,* 700 S.W.2d 901 (Tex.1985).

■ Additionally, appellants made no bill of exception or offer of proof concerning the excluded evidence. *TEX.R.CIV.EVID. 103.* In the absence of a bill of exception, the appellate court has no basis for reviewing a complaint that a trial court erred in excluding evidence. The final points of error are overruled.

We have considered Hardin's cross-point regarding jurisdiction and it is overruled.

The judgment is affirmed.

BROOKSHIRE, Justice.

"THE COURT: It seems like we are going around in circles here."

This statement is a realistic, fair appraisal of this record.

The case initially was pleaded as one of illegal and continuing trespass upon land and the *taking of land without due process and without any compensation.* Much later a false imprisonment cause of action was pleaded by Blackburn and wife.

Hardin Water Supply Corp. (HWSC) contracted with Brazos Valley Utilities, Inc. (BVU) to place a water pipeline in or near a ditch adjacent to the east side of a county maintained road locally known as Tanner Settlement Road. BVU then subcontracted with Harold Brown & Sons Ditching Company, Inc., to lay the water line. Liberty County Commissioners and they alone had given permission to HWSC to locate the line somewhere at or near the county maintained road.

Under the record as developed Appellants demonstrated clearly by their uncontroverted evidence that about half the width of the Tanner Road and the ditch where the water line was placed were on and under land owned by the Appellants. The county, rural road surface easement was obtained by prescription and use. A type of instructed verdict was rendered below. The instructed verdict was granted before the Blackburns ended their proffer of evidence and witnesses. The instructed verdict was based on a lack of pleading special damages on the false imprisonment count.

Apparently hearings were conducted prior to the selection of the jury, perhaps the day before. At these preliminary hearings the trial court ruled as a matter of law that HWCS, organized under *TEX.REV.CIV. STAT.ANN. art. 1434a* (Vernon 1980), was legally entitled to place its pipeline near or in the county maintained road and that no illegal act of trespass and no taking (without due process and without any compensation) had occurred. HWSC in its live pleadings stated that it is a non-profit water supply corporation organized, operating and existing under *TEX.REV.CIV.STAT. ANN. art. 1434a* (Vernon 1980). The trial court made its determination in disallowing the trespass count and disallowing the taking without due process count even before any testimony was presented in the jury trial. The rulings were based on a legal construction of *Articles 1433 and 1434a* as a matter of law.

But of paramount impact is the last sentence of *Article 1433* providing that:

"When deemed necessary to preserve the public health, any company or corporation chartered under the laws of this State for the purpose of constructing water-works or furnishing water supply to any city or town, shall have the *right of eminent domain to condemn private property necessary for the* construction of supply reservoirs or standpipes for water work."

*Section 4* of *Article 1434a* empowers these specific corporations to have the right of eminent domain to acquire rights-of-way and to have the right to use the rights-of-way of state highways for the laying of pipelines *under the supervision of the State Highway Commission.* Under this record the Tanner Settlement Road was not a public highway of the State of Texas. HWSC did not obtain the consent of or proceed under the supervision of the Texas Highway Commission. As a background fact, the Tanner Settlement Road, a rural road, was a surface easement obtained by prescription and limitation. The third amended answer of HWSC concedes that

the easement in question is a "county road".

The record before us strongly demonstrates that HWSC trespassed, used and affected a taking of the Appellants' land. Clearly, *Article 1433* mandates where public health must be protected that such a water company shall have the right of eminent domain to condemn private property. The right of eminent domain is grounded and proscribed by due process and the payment of adequate compensation. *TEX. CONST. Art. I, sec. 17.* Glaringly clear is the record here that the laying of the pipeline was not done under the supervision of the State Highway Commission. I would conclude that the HWSC could exercise eminent domain, but it had to observe due process and pay adequate compensation. For our Ninth Court to hold otherwise would constitute a ugly defile in the pleasant level plain of Texas constitutional law. *U.S. CONST. amend. V*, in relevant part provides:

"No person shall ... be deprived of life, liberty, or property, without due process of law; nor shall private property be taken for public use, without just compensation."

I think it is significant and profoundly so that the U.S. Constitution requires "just compensation", but the Texas Constitution is more salutary and enlightened as to its citizens. Article I, section 17, in relevant part provides:

"No person's property shall be taken, damaged or destroyed for or applied to public use without adequate compensation being made, unless by the consent of such person; ... and, when taken ... such compensation shall be first made, or secured by a deposit of money ..."

Texas requires *"adequate compensation"*.

The record before us is difficult for reaching a complete understanding because it appears that the Appellants were obliged to cease presenting their case during the testimony of Albert Blackburn, who was their first witness. Blackburn had not completed his testimony on direct examination. It is true that later the Appellants with protest announced that they had rest-ed, but later they retracted that announcement. One of the attorneys for the Appellants insisted that the ruling below amounted to a "default judgment". Perhaps more accurately that counselor should have announced that the judgment was in the nature of a partial nil dicit decree.

In *Hill Farm, Inc. v. Hill County*, 436 S.W.2d 320 (Tex.1969), the Court recognized the right of the fee-owner to use the subsurface in a manner that does not affect or impair the employment of the public easement. Under this unusual record wherein an instructed verdict was granted to the Defendants/Appellees, I perceive that the evidence clearly raised the issue that the Blackburns were the fee-owners of the land subject only to the road easement. The Court in *Hill Farm, Inc., supra,* also determined that a stranger would not be allowed to encroach upon the easement or the subsurface land. Clearly, here, HWSC was an intruder and a non-owner of the Tanner Settlement County Road. This rural or county road is a type of surface transportation easement over which the Commissioners' Court has general control. Yet the fee-owner and not a stranger-intruder has the right to use the subsurface in any manner that does not impair the enjoyment of the road easement.

Hence, the logically deducible corollary clearly is that a county government does not possess authority under the law to grant an easement in the county road subsurface owned by an individual citizen *for the exclusive private use of a non-owner. Hale County v. Harold G. Davis*, 572 S.W.2d 63 (Tex.Civ.App.—Amarillo 1978, writ ref'd, n.r.e.).

Justice Ruel Walker, writing for a unanimous Court in *Hill Farm, Inc., supra,* wrote:

"... [W]hen the Legislature *provided that public utilities might lay* their water, gas and electric lines *under public roads and city streets after notifying or obtaining the approval of the proper agency. See Articles 1433, 1433a, 1436a and 1436b, Vernon's Ann.Tex.Civ.Stat.*" (Emphasis added)

I note that no mention whatsoever is made of *Article 1434a* by Justice Walker. The omission is crucial and important. Hence, it is meaningfully evident that Justice Walker omitted *Article 1434a* as an article empowering a company or corporation with rights to use county roads.

In prior litigation HWSC took the position and maintained that a water supply corporation was not a "water utility". In *Hardin Water Supply Corporation v. City of Hardin*, 671 S.W.2d 505 (Tex.1984) the Supreme Court found that HWSC, the very same corporation before us, was a water supply corporation organized under *TEX.REV.CIV.STAT.ANN. art. 1434a* (Vernon 1980). There the City of Hardin had contended that it had the power by virtue of the Public Utility Regulatory Act, *TEX.REV.CIV.STAT.ANN. art. 1446c, et seq.* (Vernon 1980) to regulate "water utilities" rates. The high Court held that the City had misconstrued that statute referring to *Section 17(a)* of PURA. The Court held that limitations in the statute removed water supply corporations from the definition of utilities. The Supreme Court held that *Section 3* excluded a water supply corporation from the term "public utility" or "utility". The statute should be given and was given a reasonable construction. *Hardin Water Supply Corporation, supra; Calvert v. Phillips Chemical Co.*, 268 S.W.2d 478 (Tex.Civ.App.—Austin 1954, writ ref'd). The Supreme Court held also that the efforts of the legislature made it clear that such water supply corporations and their facilities are not "public utilities". It was error then, I conclude, for the learned trial court to hold and rule as a matter of law that HWSC as a public utility or a utility had authority under *Articles 1433 and 1434a* to lay its pipelines in county, rural roads where the land was owned by an individual without resorting to eminent domain with all its attendant safeguards, both procedural and substantive.

In *Flores v. Military Highway Water Supply Corporation*, 714 S.W.2d 382 (Tex. App.—Corpus Christi 1986, no writ) the opinion of the Court glaringly revealed that the Military Highway Water Supply Corporation had filed a petition in the County Court to condemn the property belonging to Raul and Olivia Flores. *Flores, supra,* is a very persuasive precedent. A special commission had been appointed in the condemnation proceeding. The commission awarded Flores and his wife $28,000 for their land. Military Highway Water Supply argued that it had authority to condemn under either *TEX.REV.CIV.STAT. ANN. art. 1434a* (Vernon 1980) or under *TEX.REV.CIV.STAT.ANN. art. 1439* (Vernon 1980). The Corpus Christi Court then recognized that MHWS is a non-profit corporation organized under *Article 1434a* for the purpose of furnishing a water supply for general farm use and domestic purposes to individuals residing in the rural community of southern Cameron and Hidalgo counties and the surrounding rural areas. *Article 1434a* is the identical statute under which Hardin Water Supply Corporation was organized. The Corpus Christi Court did not in any wise disapprove of the proceeding as an ordinary condemnation proceeding resulting in an award of $28,000. The Court, however, construed *Article 1434a* as not possessing a grant of power to *Article 1434a* corporations for the purpose of *constructing, maintaining, and operating a sewage disposal plant.*

*The Pleaded Cause of Action for False Imprisonment*

The basis for the instructed verdict on the false imprisonment count was: the Blackburns had pleaded actual and punitive damages in connection with their cause of action for trespass, continuing trespass and the taking of their land. The trial court had held at a prior hearing and as a matter of law, decided that the Blackburns had no standing to even present this first cause of action to a jury.

The Blackburns had not pleaded for any damages, certainly not special damages in connection with their much later false imprisonment allegations. Further, the Appellees through discovery had served upon the Blackburns a series of interrogatories asking about the elements of damages. The Blackburns had not properly responded. Specifically, in response to interrogato-

ries the Blackburns had not set out their contentions for special damages relating to false imprisonment.

Hence, the trial court would not permit the Blackburns to show grief, mental pain, anguish, humiliation, and other elements of damages which were held to be special damages by the court below. I have some misgivings about this ruling in view of the procedural aspects of the case, but the Appellants have perfected no bill of exception or by-standers bill.

For the reasons above, I respectfully dissent.